156 N.J. Super. 540 (1978)
384 A.2d 189
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PHILIP GENEROSO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 14, 1978.
Decided March 6, 1978.
*541 Before Judges ALLCORN, MORGAN and HORN.
Mr. Howard M. Stroger, attorney for appellant.
*542 Mr. John Degnan, Attorney General, attorney for respondent (Mr. William F. Hyland, former Attorney General; Mr. Edwin H. Stern, Deputy Attorney General, of counsel and on the brief; Ms. Anne P. Weiner, Deputy Attorney General, on the brief).
The opinion of the court was delivered by HORN, J.A.D.
This appeal raises two questions which do not appear to have been previously decided in our State. They are: (1) May a defendant's probation be revoked upon his uncorroborated admission of conduct which is in violation of the terms and conditions of his probation?[1] (2) Is a probationer entitled to Miranda[2] warnings before he is questioned concerning his activities which may lead to revocation of his term of probation?
Defendant unsuccessfully raised both of these questions at a hearing for the revocation of his term of probation before the trial court. He then appealed from the order revoking his probation.
After pleading guilty to assault with intent to rob (N.J.S.A. 2A:90-2) on April 28, 1976, defendant was given a suspended indeterminate sentence to the Youth Correction Institution complex. He was placed on probation for three years "with drug dependency rules" to apply, and was required to satisfactorily complete a residential drug-treatment program.
On June 24, 1977 defendant was charged with violating the terms and conditions of his probation because of (1) his use (and being under the influence) of heroin; (2) his use (and being under the influence) of tetrahydrocannabinols *543 (THC)[3], and (3) his refusal to cooperate with and participate in a drug-treatment program.
On July 1, 1977 a hearing on the alleged probation violation was conducted. Defendant was found to be in violation of the first two charges. The judge sentenced him to an indeterminate term at the Youth Correction Institution Complex. Upon defendant's immediate application the sentence was amended to provide that he be placed in an inpatient drug treatment center. The evidence that defendant violated probation was based solely on the testimony of his supervising probation officer, Michael Kranayk.
On May 19, 1977 urine specimens submitted by defendant indicated the use of methadone. On May 31, 1977 defendant reported to Kranayk. Kranayk questioned him with regard to current narcotics abuse. Defendant initially denied using narcotics. Upon further questioning he admitted to having used heroin during the month of February, March and April 1977. He also admitted having "abused" THC on May 14, 1977. Two other probation officers were in the office at that time. Kranayk then discussed with defendant a treatment plant for his narcotics abuse. Defendant said he was not interested in a residential drug treatment program. Kranayk told defendant that, if he would not enter an inpatient program as arranged by Kranayk, then defendant would be taken into custody and charged with violation of probation. The charge of probation violation followed.
We consider the first question  as to lack of corroboration. Defendant submits that State v. Lucas, 30 N.J. 37, 51 (1959), supports his contention that his uncorroborated admission to his probation officer was an insufficient foundation upon which to base his probation violation. In Lucas defendant was convicted of murder in the first degree by reason of his feloniously setting on fire a building, causing the *544 death of three occupants. He contended that the trial judge erred in refusing to direct a verdict of acquittal because of insufficient corroboration of his confession. Although defendant was unsuccessful in this argument because the State, in the view of the Supreme Court, had introduced sufficient proof independent of the confession to strengthen or bolster the confession "tend[ing] to generate a belief in its trustworthiness, plus independent proof of loss or injury" (30 N.J. at 56), nevertheless the court noted that:
It is a widely accepted doctrine reflected in either American decisional or statutory law that an uncorroborated extra-judicial confession cannot provide the evidential basis to sustain a conviction for crime. [at 51; citations omitted]
The difficulty with the instant defendant's argument on this point is that here we are not concerned with a prosecution of him for the crime of which he was convicted. We are reviewing only a proceeding which sought to revoke defendant's probation to which he was sentenced upon his conviction. Defendant's brief refers to his "conviction" for violating the terms of his probation. But although the use of the word "conviction" might seemingly permit defendant to rely on the holding of Lucas, his argument is not a valid one. He has not been "convicted" of violating probation, and the revocation of probation proceedings were neither a criminal prosecution nor tantamount to a criminal prosecution.[4]
The statute providing for revocation of probation, N.J.S.A. 2A:168-4, in part provides:
At any time during the probation period the court may issue a warrant and cause the probationer to be arrested for violating any *545 of the conditions of his probation, or any probation officer, police officer, or other officer with power of arrest, upon the request of the chief probation officer, may arrest the probationer without a warrant; and a commitment by such probation officer setting forth that the probationer has, in his judgment, violated the conditions of his probation shall be sufficient warrant for the detention of such probationer in the county jail, house of detention or local prison, when designated in the commitment, until he can be brought before the court. Such probation officer shall forthwith report such arrest or detention to the court and submit to the court a report showing the manner in which the probationer has violated his probation. Thereupon the court, after summary hearing, may continue or revoke the probation and the suspension of sentence, and may cause the sentence imposed to be executed or impose any sentence which might originally have been imposed. * * * [Emphasis supplied]
Probation is not a sentence in itself, but rather is a device that, among other things, designates a period during which the imposition or the execution of sentence is suspended and the convicted person is permitted to continue at large upon stated conditions, upon the violation of which he makes himself liable to imprisonment. Adamo v. McCorkle, 26 N.J. Super. 562 (App. Div. 1953), rev'd on other grounds, 13 N.J. 561 (1953), cert. den. 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. 1080 (1954).
The object of a summary revocation hearing, as indicated by the above statute, is simply to determine whether a probationer has violated "any of the conditions of his probation" and, if so, what punishment shall be imposed therefor. As stated in State v. Moretti, 50 N.J. Super. 223 (App. Div. 1958):
The evidence at a hearing for revocation of suspension of sentence or probation does not have the same objective as that taken at a criminal trial, its purpose being to satisfy the conscience of the court as to whether the conditions of the suspended sentence have been violated. Brill v. State, 159 Fla. 682, 32 So.2d 607 (Sup. Ct. 1947). [at 237]
See also, State v. Zachowski, 53 N.J. Super. 431, 437-441 (App. Div. 1959).
*546 It is eminently clear that "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 2, 600, 33 L.Ed.2d 484 (1972)[5]. Nor does the full panoply of rights due a defendant apply to probation revocation proceedings. Although a probation revocation may result in a defendant's loss of liberty, it "is not a stage of a criminal prosecution, * * *." Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973). See also, State in the Interest of D.G.W., 70 N.J. 488, 506 (1976). Our courts have not sought to impose any greater due process requirements in probation-violation proceedings than are required under the Federal Constitution. State v. Johnson, 133 N.J. Super. 457 (App. Div. 1975).
In view of the foregoing, which amply demonstrates that defendant was neither "convicted" of violation of probation nor underwent a criminal prosecution, we are satisfied that the judge properly and validly revoked his probation on the sole basis of the probation officer's testimony as to defendant's admission of violation. We desire to note further that defendant did not testify at the hearing and produced no witnesses in his behalf. We are not unmindful of the weakness inherent in an allegedly uncorroborated admission of a probationer as a basis for possibly imposing an incarcerating sentence upon revocation of his probation. But this problem is one which may concern the court as a matter of credibility and weight of the evidence, and as a general *547 matter of proof. We are not confronted here with these considerations  only, as already indicated, the matter of the uncorroborated admission per se as the foundation for a finding of probation violation.
We turn next to the second contention submitted by defendant  that he was not given the Miranda warnings.
Although the application of Miranda to discussions between a probationer and his supervisor has not been directly litigated in this State, the precise issue has been addressed in 77 A.L.R. 3d 669, "Probation Revocation  Miranda Warnings." The annotator sums up the cases as follows:
It is uniformly held that a probationer's statements obtained by probation officers without first advising the probationer of his rights as prescribed in the Miranda ruling, are admissible in probation revocation proceedings. [at 674]
We are satisfied that the holding of our Supreme Court in State v. Davis, 67 N.J. 222 (1975), cert. den. 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976), is controlling. That case involved the application of the Miranda rule to interviews between parolees and parole officers. The court said:
It is clear that the Miranda rule is not applicable to the routine parole interview between a parole officer and a parolee. A parole officer acts as a guide and counselor to the parolee in his efforts to achieve and maintain rehabilitation. To work effectively the parole officer must know the parolee's whereabouts and activities both social and business. Routine conditions of parole state that the parolee is to report regularly to his parole officer and make a full disclosure of the foregoing. These routine reports and interviews are invariably non-custodial and, therefore, outside the ambit of Miranda. Moreover, implicit in the relationship is the requirement that the parolee cooperate fully and unreservedly in the parole experiment. [at 226]
As already shown, probation and parole revocation proceedings have been equated by virtue of Gagnon v. Scarpelli, supra, and State v. Johnson, supra. There is no reason *548 why the Miranda rule should apply to routine probation interviews between a probationer and a probation department officer.
Affirmed.
NOTES
[1] He was required to

* * * obey the laws of the United States, the laws of any and all states in which [he] may be and the ordinances of any and all municipalities in which [he] may be.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Both heroin and THC are proscribed drugs. N.J.S.A. 24:21-5 and 24:21-20.
[4] We note that the order appealed from was on the Passaic County "Judgment of Conviction Form." From the appearance of this form of "judgment" it would appear that the revocation proceeding was a nonjury trial, terminating in a "conviction." But, of course, this cannot affect the true nature of the proceeding, its object or the determination.
[5] It is interesting to note that Morrissey, supra, 408 U.S. at 487-488, 92 S.Ct. at 2603, specifically mentioned that "[r]evocation of parole on a charge that the parolee committed a criminal offense requires proof either in the form of the parolee's admission or * * *." The court, however, did not address the precise question before us. See also, White v. New Jersey State Parole Board, 136 N.J. Super. 360, 368 (App. Div. 1975).