174 N.J. Super. 90 (1979)
415 A.2d 390
STATE
v.
JOSEPH CAVANAUGH.
STATE
v.
JOHN DEGAGLIA.
STATE
v.
MICHAEL VON GRAEVENITZ.
Superior Court of New Jersey, Resentencing Panel.
Argued December 6, 1979.
Decided December 10, 1979.
*91 Before Judges COLEMAN, MARZULLI and YANOFF.
As to Joseph Cavanaugh: Leigh Bienen, Office of the Public Advocate, Special Projects, argued the cause for defendant (Stanley C. Van Ness, Public Defender, attorney). Peter S. Hamerslag, Assistant Prosecutor, for the State (John H. Stamler, Union County Prosecutor, attorney).
As to John DeGaglia: Thomas Menchin, Deputy Public Defender, argued the cause for defendant (Stanley C. Van Ness, Public Defender, attorney). Joseph A. Hayden, Assistant Prosecutor, for State (Donald S. Coburn, Essex County Prosecutor, attorney).
As to Michael Von Graevenitz: Leigh Bienen, Office of the Public Advocate, Special Projects, argued the cause for defendant (Stanley C. Van Ness, Public Defender, attorney). Joyce Munkacsi, Assistant Prosecutor, for State (Richard Rebech, Middlesex County Prosecutor, attorney).
*92 The opinion of the court was delivered by YANOFF, J.S.C.
All the defendants in the three cases listed above pleaded guilty to an act of lewdness under N.J.S.A. 2A:115-1. They were examined to determine whether they were compulsive sex offenders, and sentenced pursuant to the provisions of N.J.S.A. 2A:164-6 to an indeterminate term at the Adult Diagnostic Treatment Center (ADTC), not in excess of three years, the maximum penalty under N.J.S.A. 2A:115-1. Joseph Cavanaugh was sentenced June 23, 1978; John DeGaglia was sentenced June 13, 1978 and Michael Von Graevenitz was sentenced October 16, 1978. Thus, all have served more than six months at the ADTC. With credit for time served, they may also already have served more than 18 months. All have applied for release therefrom pursuant to the provisions of N.J.S.A. 2C:1-1d(2), the New Jersey Code of Criminal Justice (hereinafter Code).
Three statutes are involved:
(1) N.J.S.A. 2A:115-1, which reads:
Any person who commits open lewdness or a notorious act of public indecency, grossly scandalous and tending to debauch the morals and manners of the people, or in private commits an act of lewdness or carnal indecency with another, grossly scandalous and tending to debauch the morals and manners of the people, is guilty of a misdemeanor.
(2) Two provisions of the Code: N.J.S.A. 2C:1-1d(2) which reads:
Any person who is under sentence of imprisonment on the effective date of the code for an offense committed prior to the effective date which has been eliminated by the code or who has been sentenced to a maximum term of imprisonment for an offense committed prior to the effective date which exceeds the maximum established by the code for such an offense and who, on said effective date, has not had his sentence suspended or been paroled or discharged, may move to have his sentence reviewed by the sentencing court and the court may impose a new sentence, for good cause shown as though the person had *93 been convicted under the code, except that no period of detention or supervision shall be increased as a result of such resentencing.

and
N.J.S.A. 2C:14-4, as follows:
A person commits a disorderly persons offense if he does any flagrantly lewd and offensive act which he knows or reasonably expects is likely to be observed by other nonconsenting persons who would be affronted or alarmed. `Lewd acts' shall include the exposing of the genitals for the purpose of arousing or gratifying the sexual desire of the actor or of any other person.
Under the Code a disorderly person's offense carries a possible six-month term. N.J.S.A. 2C:43-8.
(3) The Sex Offender Act, N.J.S.A. 2A:164-3 et seq., repealed by N.J.S.A. 2C:98-2, for which has now been substituted N.J.S.A. 2C:47-1 to 7.
N.J.S.A. 2A:164-3 provides that a person convicted of private or open lewdness or indecent exposure shall be committed to the ADTC for examination. If it is determined that his conduct "was characterized by a pattern of repetitive, compulsive behavior" in convictions for private lewdness, open lewdness or indecent exposure, upon recommendation by ADTC the sentencing court was required to submit the offender to a program of "specialized treatment" N.J.S.A. 2A:164-5, for a term not longer than the crime for which he was convicted, N.J.S.A. 2A:164-6b. He could be released on parole before the expiration of the term by the State Parole Board if it was determined by a special classification review board that he "[was] capable of making an acceptable social adjustment in the community." N.J.S.A. 2A:164-8.
N.J.S.A. 2C:47-1 lists the crime for which an offender must be referred to ADTC for examination. "Lewdness," the offense described in N.J.S.A. 2C:14-4, is not among them.
Defendants' application for resentence under N.J.S.A. 2C:1-1 d(2) was followed by an application for bail. Bail was denied, *94 but an early date for hearing and possible resentence was fixed. Application was made for rehearing as to bail. This opinion is a ruling on those applications.
At the outset it must be noted that R. 3:26, which controls fixing of bail, makes no provision for bail in this situation. A defendant, prior to conviction, generally has a right to bail, not merely by rule (R. 3:26-1), but by force of Constitution. After conviction, in the event of appeal, he has the right to bail only under the specific circumstances set forth in R. 2:9-4. Bail may also be granted in certain other cases, such as extradition and failure to move the indictment. R. 3:26-1. No provision is made for bail in post-conviction relief applications. State v. Rose, 88 N.J. Super. 88 (Law Div. 1965).
As a technical matter, defendants are not entitled to bail. But their argument is that if they were convicted under N.J.S.A. 2C:14-4 for an offense committed after the effective date of the Code, they could be sentenced only to six months' incarceration and could not be required to submit to treatment at ADTC, and therefore are entitled absolutely to be released. The corollary of that argument is that until the court finally rules upon their right to release, they are entitled to be placed on bail, and that the rules should be relaxed under the authority of R. 1:1-2 to that end. In our view, an appropriate balancing of applicants' and the public's interest requires only that there be a dispositive hearing, which has already been provided. We are convinced that if they are entitled to be released, they should be released at the earliest opportunity, not on bail, but finally and definitively.
Crucial to defendants' position is the contention that N.J.S.A. 2C:14-4 is the offense congruent to N.J.S.A. 2A:115-1, the offense for which defendants were convicted, and since that carries only a six-month term they are entitled to be released.
The question of which offenses under the Code parallel or are congruent with pre-Code offenses permeates many applications *95 for resentence. As the issue is presented here, our ruling in the cases at bar is not dispositive as to other sections of the Code. Code offenses are classified in degrees of one to four (N.J.S.A. 2C:43-1), as disorderly persons offenses or petty disorderly offenses (N.J.S.A. 2C:43-8). Questions of parallelism between 2A and 2C offenses may involve determination whether the "generic offense" or the graded degree subdivision thereof, is the congruent offense. At this point we decide only the issue of bail in the cases before us.
State v. Brenner, 132 N.J.L. 607 (E. & A. 1945), narrates the history of N.J.S.A. 2A:115-1. The common law did not punish acts done in private, and Justice Heher points out in Brenner:
Originally the Crimes Act [L. 1898, c. 235, § 51] condemned only `open lewdness, or any notorious act of public indecency, grossly scandalous and tending to debauch the morals and manners of the people.' [at 609]
The 1906 amendment [L. 1906, c. 71, § 1], for the first time, proscribed private acts of "lewdness or carnal indecency."
Lewdness, within the concept of the statute, imports some degree of sexual aberration or impurity. It denotes gross and wanton indecency in the sexual relations. [Id. at 610]
Under this definition a broad spectrum of conduct came within the statutory proscription. "Handling a child's private parts, coupled with exposure, was held both contributing to the delinquency of a minor and a violation of the statute." State v. Blount, 60 N.J. 23 (1972). Two years later State v. Dorsey, 64 N.J. 428 (1974), narrowed the scope of the statute. There defendants were charged with private lewdness for unbuttoning a young lady's dress and placing hands upon her breast, thighs and legs. This was held error because of the lack of preciseness of N.J.S.A. 2A:115-1. It was the court's view that assault and battery was the appropriate charge. In the course of the opinion Justice Mountain, for the court said:
This decision [State v. Brenner, 132 N.J.L. 607 (E. & A. 1944)] thus holds that the statute, N.J.S.A. 2A:115-1, does not include acts of adultery or fornication, and *96 that conduct will not necessarily amount to private lewdness merely because, had the act been committed openly, it would be considered public lewdness. The basis for excluding adultery and fornication from the reach of the statute condemning private lewdness is the fact that these kinds of sexual misconduct have been made crimes by separate enactments, viz, N.J.S.A. 2A:88-1 (adultery) and N.J.S.A. 2A:110-1 (fornication). We accept this interpretation, and note that the same may be said as to prostitution. N.J.S.A. 2A:133-1 et seq. [at 431-432]
He noted also:
In the proposed New Jersey Penal Code, submitted as part of the Commission's Final Report (Oct. 1971), there is no reference to private lewdness as such. Open lewdness is made a disorderly persons offense, § 2C:34-1, as is indecent exposure, § 2C:14-5. Conduct likely to debauch or impair the morals of a minor is proscribed by §§ 2C:14-3 and 2C:24-4. [at 433]
He continued:
Section 2C:14-4 of the proposed New Jersey Penal Code is entitled `Sexual Assault' and would seem exactly designed to cover the kind of censurable conduct of which the jury found this defendant to have been guilty. Under that proposed enactment as well, defendant's conduct here would be deemed a disorderly persons offense. [at 434]
The footnote to this passage quotes not the section which is presently under consideration as N.J.S.A. 2C:14-4, but a section similar to a combination of N.J.S.A. 2C:14-2 and N.J.S.A. 2C:14-3. It must be remembered that the Code was changed many times during the years it was under consideration by the Legislature until its final adoption in 1978.
Despite Dorsey, the law was not entirely clarified. It was followed by State v. Treat, 130 N.J. Super. 305 (App.Div. 1974), in which fellatio was held within the ban of the statute in an opinion citing Dorsey. In State v. DeLellis, 137 N.J. Super. 309 (1975), the Appellate Division ruled as it had in Treat, but was reversed without opinion in 70 N.J. 526 (1976). Yet, State v. J.O., 69 N.J. 574 (1976), holding that fellatio between consenting adults in private was not proscribed by N.J.S.A. 2A:115-1, implied that the statute would apply if such conduct occurred in *97 public. Thus, there is still an aspect of vagueness in the precise reach of N.J.S.A. 2A:115-1.
Analysis of the facts in the three cases at bar, of which more later, in the light of Dorsey, raises questions as to the basis upon which defendants pleaded "guilty" and upon which the pleas were accepted. In the case of DeGaglia there was a plea bargain, as the result of which a charge of larceny from the person was recommended for dismissal. Cavanaugh was charged with both lewdness and impairing the morals of a minor under N.J.S.A. 2A:96-3. As the result of the plea bargain, he pleaded only to the charge under N.J.S.A. 2A:115-1. Von Graevenitz was charged with three counts, including assault with intent to rape and attempted rape. The plea bargain resulted in a plea to N.J.S.A. 2A:115-1 only. All three have a record of prior sexual offenses.
Appraisal of the factual situation in these cases leads to the conclusion that the pleas were given and accepted because the conduct fitted into a broad, generally accepted definition of "lewdness."
The process of determining congruence of 2A and 2C offenses involves more than a matching of the indictment in the 2A offense against the claimed Code offenses. Certainly, in cases such as these, where the scope of the 2A statute is not entirely clear and where the pleas were given and accepted for considerations acceptable to both prosecutor and defendant, conscientious discharge of our duties, having regard for the public welfare, requires that we subject applicants' conduct to scrutiny before answering the question of congruence.
Preliminary review indicates that, at least prima facie, what they did came within some aspect of "Criminal Sexual Contact," *98 as defined in N.J.S.A. 2C:14-3. Offenses thereunder are either third or fourth degree. Thus, the possible penalty may be five years or 18 months. N.J.S.A. 2C:43-6. Just as Dorsey noted that offenses, such as prostitution and fornication, which were specifically within the ban of other statutes, were not comprehended by N.J.S.A. 2A:115-1, so, under the statutory plan of the Code, which deals with sexual offenses in terms of "sexual contact," N.J.S.A. 2C:14-4 is limited in scope and other sexual offenses are encompassed by N.J.S.A. 2C:14-2 and 3.
A hearing is required to determine which 2C offense is appropriate to each applicant's conduct. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1975). Cf. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Avant v. Clifford, 67 N.J. 496 (1975); People v. Ramirez, 25 Cal.3d 260, 158 Cal. Rptr. 316, 599 P.2d 622 (Sup.Ct. 1979); N.J.S.A. 2A:168-4; State v. Generoso, 156 N.J. Super. 540, 546 (App.Div. 1978). What form such a hearing will take and what data may be used to determine equivalence of 2A and 2C offenses is not now before us.
Additionally, an applicant for review of sentence must show not merely that he is serving a sentence, the maximum of which is greater than the maximum of the comparable 2C offense, but that there is "good cause" for the resentencing. Here, it is contended, that "good cause" is the fact that the equivalent 2C offense carries only a six-month term. This, however, is predicated upon an assumption which may not be borne out when the facts are explored.
In our view, "good cause" has broader application which prevents release of applicants without hearing in cases such as these. See State v. Rothfeld, 170 N.J. Super. 514 (Law Div. 1979). We must bear in mind the purposes of the Sex Offender Act, described in State v. Wingler, 25 N.J. 161 (1957), as a statute in which

*99 ... the Legislature has, with sufficient cause, classified certain repetitive, compulsive sex offenders as falling within a separate group urgently requiring, for the protection of society as well as the offenders themselves, special confinement and treatment until they are capable of making acceptable social adjustments, but in no event beyond the maximum term fixed by law. [at 175]
There are two interests  that of society in protection against compulsive sex offenders and that of the person being treated in the treatment. Cursory review of the records of all three applicants shows that both interests require more than perfunctory consideration. We cannot forget that not every sex offender, but only those who are "repetitive and compulsive," are given sex offender treatment.
Joseph Cavanaugh pled "guilty" to a charge under N.J.S.A. 2A:115-1, based upon indecent exposure to a 15-year-old girl. The ADTC report states: "He has a lengthy history of similar exposures."
With respect to Von Graevenitz, the victim's version of the facts, as shown by the ADTC report, is: On August 11, 1978, the defendant "streaked" into the 7-Eleven Store in which complainant was employed, exposed himself and said to her that he would not leave until she had shown him one of her breasts. The defendant grabbed her and tried to force her down and the victim fought back and knocked off the defendant's glasses. Defendant left a dollar bill, saying that that was for a phone call to the police.
The defendant agrees that he "streaked" into the 7-Eleven Store. He states that the victim indicated that she would call the police if he returned; that he handed the victim the money for calling the police, and that the victim struck his arm and knocked off his glasses when he handed her the money. He did not admit knocking her down while attempting to see her breasts. He, too, has a history of prior exposure.
DeGaglia was charged with "Robbery," amended to "Larceny from the Person" and "Open Lewdness." On June 5, 1978 he *100 was sentenced on the larceny from the person count to an indeterminate term at Yardville, and on the lewdness charge to the ADTC at Avenel to an indeterminate term not in excess of three years, concurrent with the larceny from the person sentence. He was then resentenced under date of June 13, 1978, with the result that the sentence on the first count was suspended and the sentence on the second count retained, with credit for time spent from November 17, 1977 to June 5, 1978.
The official version of the offense in the presentence report indicated that he forced the victim into an alley "where he began unbuttoning her blouse and her brassiere. When she protested, he told her that if she did not remain quiet, he would rip her clothing off. She stated that he began fondling her breasts, despite her protests." The victim also stated that he took $40 from her wallet. The defendant's version is that he thought she was easy so he started "feeling her up" and that he asked her for some money and she gave him $40. He also has a history of prior sexual offenses.
The ADTC report, dated June 1979, states of him "Continued in-patient treatment is recommended at this time and accepted by resident." It shows that he has made significant therapeutic progress, and with concentrated effort ... on problem areas, it is felt that he will be ready for parole consideration in the near future."
The conclusion is that the applications for bail will be denied and hearings held December 18, 1979, as scheduled, for the purpose of resentencing the defendants. Included will be consideration of whether the defendants should not be forthwith released or, if released, placed under appropriate supervision.