186 N.J. Super. 423 (1982)
453 A.2d 195
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LARRY JOHNSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 12, 1982.
Decided May 3, 1982.
*424 Before Judges FRITZ, ARD and TRAUTWEIN.
Stanley C. Van Ness, Public Defender, attorney for appellant (Arthur L. Levy, designated counsel, and on the brief).
James R. Zazzali, Attorney General, attorney for respondent (Debra L. Stone, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by TRAUTWEIN, J.A.D.
This appeal tests the amenability of probation revocation proceedings to the Fifth Amendment privilege against self-incrimination and our Rules of Evidence.
On November 23, 1977 defendant received three concurrent sentences of five to seven years. All sentences were suspended and defendant placed on probation for five years.
He received notice of charges of violation of probation on June 25, 1980.
Violation of probation specifications charged defendant with (1) failure to complete a drug rehabilitation program; (2) failure to report a change of address; (3) failure to report to the Probation Department and (4) a conviction for shoplifting.
A revocation of probation hearing was conducted on July 11, 1980 by the original sentencing judge. Defendant was represented by counsel. Defendant, through counsel, admitted Specification No. 4 but denied Specification No. 3. The State withdrew Specifications Nos. 1 and 2. Defendant was found guilty of Specification No. 3  failure to report  in addition to Specification No. 4. The sentencing judge revoked probation, vacated the prior sentences and imposed a sentence of three to four years in New Jersey State Prison and two concurrent six months *425 terms in the Union County Jail to run concurrent with the State Prison sentence. A motion for reduction of sentence was heard and denied by Judge Brody on August 8, 1980. This appeal followed.
Other than to admit Specification No. 4 and deny Specification No. 3 through counsel, defendant did not testify nor produce witnesses on his behalf.
Defendant now contends as a matter of plain error the following:
POINT I THE TRIAL COURT'S AND PROSECUTOR'S COMMENTS ON AND CONSIDERATION OF DEFENDANT'S FAILURE TO TESTIFY AT THE TRIAL TO DENY THE CHARGES AGAINST HIM VIOLATED THE DEFENDANT'S FIFTH AND FOURTEENTH AMENDMENT PRIVILEGE TO REMAIN SILENT AND WAS PLAIN ERROR.
POINT II THE TRIAL COURT'S AND PROSECUTOR'S COMMENTS ON AND CONSIDERATION OF DEFENDANT'S FAILURE TO TESTIFY AT THE TRIAL TO DENY THE CHARGES AGAINST HIM VIOLATED ACCEPTED NEW JERSEY RULES OF EVIDENCE, N.J.S.A. 2A:84A-31, RULE 39, AND N.J.S.A. 2A:84A-17, RULE 23.
A. NEW JERSEY RULES OF EVIDENCE, N.J.S.A. 2A:84A-1 ET SEQ., ARE APPLICABLE TO THE HEARING BELOW.
These contentions focus on certain comments made by Judge Brody at the inception of the revocation hearing and in his ultimate decision determining a violation of probation. As the hearing began the following colloquy occurred:
THE COURT: Well, maybe we should hear Mr. Johnson first and then you can rebut what he has to say since the positive evidence  which way do you want to go first?
MR. WALDMAN (attorney for defendant): I think the State should.
MR. RODBART (Assistant Prosecutor): We're prepared to go first. I call Marvin Smith.
While Smith was not defendant's supervising probation officer he was called to lay a foundation for admission into evidence of business records of the Probation Department referable to defendant's reporting record. Defense counsel objected and argued that defendant's supervising probation officer should be the one to lay such a foundation. The following discussion ensued:
THE COURT: Is there any reason why he's not here?

*426 MR. RODBART: I have no way of determining, I suspect the defendant will allege that he did in fact report and told they had no record of him. I have no way until and unless he testified.
THE COURT: I had asked whether we shouldn't first take care of his testimony so that you could rebut it since he has to prove it.
MR. RODBART: There's no obligation on the defendant's part to put his evidence first.
THE COURT: There is if I tell him to.
MR. RODBART: That's not my understanding of the law.
THE COURT: Even if I tell him to?
MR. RODBART: Exactly.
In any event Francis Makowski, defendant's probation officer, then appeared and testified to the contents of a notebook sheet which had theretofore been admitted into evidence under the business records rule after a foundation had been laid by Smith.
Judge Brody found defendant guilty of Specification No. 3  failure to report to the Probation Department. In rendering his decision Judge Brody considered the defendant's failure to testify in the following fashion:
In any event, it would seem to me Mr. Johnson unmistakeably knew that he had an obligation to report in which he failed to do. I also note that Mr. Johnson did not testify in this matter and while it's not critical in my own mind to the outcome, I think in this proceeding it's something that may be taken into account by way of denying any of these charges, so I will find him guilty of specification number three.
On appeal, defendant for the first time argues that the comments of Judge Brody and the prosecutor at the inception of the hearing and the comment of the judge in his decision referable to defendant's silence violated his Fifth Amendment right to remain silent.
While defendant's admitted conviction for the crime which is the basis for Specification No. 4  shoplifting  is sufficient in itself, to warrant revocation of probation (Hallman v. State Parole Board, 46 N.J. 279 (1966)), we deem the issues of Fifth Amendment privilege and due process of sufficient import to warrant resolution on the merits.

*427 I

DOES THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION APPLY TO PROBATION REVOCATION PROCEEDINGS?
Our research discloses that the United States Supreme Court and New Jersey courts have not directly addressed this issue. There are cases, however, in settings sufficiently similar to probation revocation proceedings which afford substantial assistance in the resolution of this issue as well as cases in other jurisdictions directly apposite.
Initially, from our analysis of these cases we conclude that a probation revocation hearing is not a criminal proceeding but rather a stage in the corrections process. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), dealt with a parolee claiming that due process entitled him to a hearing before his parole could be revoked. The court held that under the Due Process Clause of the U.S. Constitution a parolee was entitled, at the minimum to the following rights:
We cannot write a code of procedure; that is the responsibility of each State. Most States have done so by legislation, others by judicial decision usually on due process grounds. Our task is limited to deciding the minimum requirements of due process. They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial. [408 U.S. at 488-489, 92 S.Ct. at 2603-2604; emphasis supplied; footnote omitted]
It appears that the foregoing rights resulted from an accommodation of a defendant's interest in remaining free on parole and the State's interest in preserving its inherent discretion in the operation of a corrections system.
*428 Morrissey further holds that since the parolee had already been convicted of a crime the State had "an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." 408 U.S. at 483, 92 S.Ct. at 2601.
In Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973), the court held that the due process requirements for parole revocation as enunciated in Morrissey applied to probation revocation. New Jersey followed this holding in State v. Johnson, 133 N.J. Super. 457, 461 (App.Div. 1975).
More in point we turn to those cases addressing directly the question of the Fifth Amendment right to remain silent, albeit not in a setting of probation revocation proceedings.
In Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the court held that the Fifth Amendment right to remain silent was not applicable at a prison disciplinary proceeding, noting that the Fifth Amendment right to silence "derogates rather than improves the chances for accurate decisions." Id. at 319, 96 S.Ct. at 1558. The court further concluded that such a proceeding was part of the corrections process and not a criminal trial at which criminal liability was adjudicated. While factually distinguishable (constitutionality of a state regulation prohibiting face-to-face interviews between news media representatives and individual inmates) the U.S. Supreme Court, in Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974), iterated a fundamental proposition pronounced in Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1059, 92 L.Ed. 1356 (1947), to the effect that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."
In State v. Davis, 67 N.J. 222 (1975), cert. den. 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976), a parole officer interviewed the parolee while he was in jail regarding his involvement in an *429 armed robbery while out on parole. The officer testified regarding the interview at the parolee's trial on armed robbery. The parolee claimed that such testimony was inadmissible because he was not given Miranda warnings (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). The court held that since the parolee's statements were given in a custodial situation and used against him at the trial for the substantive crime, they were inadmissible for failure to give Miranda warnings. The court, however, also held that Miranda was not applicable to the routine parole interview. 67 N.J. at 226-227.
In State v. Generoso, 156 N.J. Super. 540 (App.Div. 1978), defendant was placed on probation "with drug dependency rules." 156 N.J. Super. at 542. A urine sample of defendant indicated the use of methadone. Defendant subsequently admitted to use of heroin at an interview with his probation officer. The trial court revoked defendant's probation based on the uncorroborated testimony of the probation officer. Defendant claimed that the testimony was inadmissible for failure to give Miranda warnings and, if admissible, insufficient to find a violation of probation. The court held, citing Davis, that Miranda was not applicable to probation revocation proceedings. As to the defendant's second claim the court conceded that an uncorroborated admission was sufficient for a finding of probation violation. The rationale of the court was that revocation was not a criminal adjudication but part of the corrections process. 156 N.J. Super. at 547.
While not directly expressed, Davis and Generoso point toward the inapplicability of the Fifth Amendment privilege to probation revocation proceedings. If a probationer's statement at a probation interview without Miranda warnings is admissible at such a proceeding, his silence at an interview is also admissible. Our analysis thus narrows down to whether there is reason to distinguish between silence at a probation interview and silence at a revocation proceeding. The distinction between the interview and the revocation proceeding is that revocation does not occur at the interview, but does at the revocation proceeding. *430 We conclude the distinction is irrelevant. The probationer has a duty to report to his probation officer. To hold that a probationer's silence at a revocation proceeding cannot be used against him only forces the probation officer to interview the probationer prior to the revocation proceeding and then employ the probationer's silence at the interview, in the fashion of Davis, as evidence against him at the revocation proceeding. Such a procedure serves no useful purpose.
Courts in other jurisdictions addressing the issue hold that the Fifth Amendment privilege does not apply to probation revocation proceedings. In State v. Heath, 343 So.2d 13 (Fla.Sup.Ct. 1977), cert. den. 434 U.S. 893, 98 S.Ct. 269, 54 L.Ed.2d 179 (1977), a probationer was compelled to testify by the trial court in a revocation proceeding regarding his participation in an armed robbery. The Florida Supreme Court held that the Fifth Amendment privilege did not apply to probation revocation proceedings:
We now hold that a probationer, upon a specific request and at periodic intervals, may be required to identify himself and provide all necessary information for his supervision including the place of his residence and his employment. He may also be required to confirm or deny his location at a particular place at a particular time, to explain his noncriminal conduct, and to permit the search of his person and quarters by the supervisor. Failure to do so may itself be grounds for revocation of probation. His agreement to accept the terms of probation effectively waives his Fifth Amendment privilege with regard to this information. There would be no practical means to properly supervise an individual on probation without a requirement that the probationer respond to directions and requests for information from the probation supervisor. On the other hand, the Fifth Amendment privilege against self-incrimination must be applicable to specific conduct and circumstances concerning a separate criminal offense. [343 So.2d at 16; emphasis supplied]
In State v. Mangam, 343 So.2d 599 (Fla.Sup.Ct. 1977), the probationer did not testify at his revocation hearing, and the judge, in finding a violation of probation, considered the probationer's silence as a factor against him. The Florida Supreme Court, citing Heath, held that the Fifth Amendment privilege against self-incrimination did not apply to probation revocation proceedings. Id. at 600. As a term of probation a probationer must report on his activity. The refusal to discuss compliance or *431 noncompliance with such a term was a factor a judge could properly have considered in determining whether a probationer violated probation.
In Holdren v. People, 168 Colo. 474, 452 P.2d 28 (Sup.Ct. 1969), the judge at a probation revocation proceeding asked the probationer if he had been drinking, to which the probationer answered in the affirmative. On appeal the probationer claimed the question violated his privilege against self-incrimination. The Colorado Supreme Court rejected this claim, holding the privilege was applicable only if the violation of probation involved a crime for which he had not been prosecuted. 452 P.2d at 30.
Heath, Mangam and Holdren squarely address the issue in the instant appeal. A revocation proceeding is not part of the criminal process, but part of the corrections process. The violation at issue in the instant appeal, failure to report to the Probation Department, is not a crime for which defendant has not been prosecuted.
We conclude that the Fifth Amendment privilege against self-incrimination is not available to a probationer at a revocation hearing nor does this deprivation offend due process. We further hold that a probationer's silence at such a hearing may be considered by the judge in arriving at his decision.

II

DO EVID. R. 23(1) AND EVID. R. 39 GRANT A PROBATIONER A PRIVILEGE AGAINST SELF-INCRIMINATION AT PROBATION REVOCATION PROCEEDINGS?
Because these rules apply to criminal proceedings and because we have determined that a probation revocation hearing is not a criminal proceeding, the short answer is that the rules are inapplicable. Criminal liability is not adjudicated in a probation revocation proceeding. Morrissey v. Brewer, supra; State v. Generoso, supra.
Affirmed.