207 N.J. Super. 126 (1986)
504 A.2d 43
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RAYMOND REYES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1985.
Decided January 22, 1986.
*132 Before Judges FURMAN, COHEN and ASHBEY.
Patricia A. Kern, Assistant Deputy Public Defender, argued the cause for appellant (Thomas S. Smith, Acting Public Defender, attorney; Ms. Patricia A. Kern of counsel and on the brief).
Gilbert G. Miller, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General, attorney; Mr. Gilbert G. Miller, of counsel and on the letter brief).
The opinion of the court was delivered by COHEN, J.A.D.
After pleading guilty to a number of charges, defendant was sentenced to a probationary term with the condition that he successfully complete an eighteen-month residential drug program. He entered the program but was discharged after four months. The probation department sent him notice to report to his probation officer, but he did not appear. He was then charged with violating his probation for failure to complete the drug program and for failing to report. After a hearing, Judge Hoffman determined that the violations had taken place, concluded *133 that defendant's probation should be revoked, and imposed a term of incarceration. Defendant appealed.
Before us, defendant makes three arguments. The first is that the State's evidence was inadmissible hearsay and insufficient to support the court's findings. The second is that the reason for his discharge from the drug program was an alleged violation of a rule prohibiting sexual contact between program participants. Such a rule, defendant argues, restricts constitutionally protected conduct and, further, is not reasonably related to the rehabilitative purposes of N.J.S.A. 2C:45-1. Third, defendant argues that he is entitled to credit against his term of imprisonment for the time he spent in the drug program before discharge. We agree with Judge Hoffman's rejection of defendant's contentions and therefore affirm.
The evidence was the testimony of Senior Probation Officer Gloria Brennan. She was not defendant's probation officer, who was on sick leave at the time of the hearing. She testified from probation department records that two letters were sent to defendant instructing him to report on a certain date. One went to an address supplied by defendant, was not delivered, and was returned with the notation, "addressee unknown." The other was received at defendant's parents' home. Defendant did not report at the time he was told to do so. He did, however, come into the probation office some fifteen days later for an unscheduled visit.
Ms. Brennan also testified that she had no first-hand knowledge of the problem at the drug program. She said that Paul Rivera, a program counselor, had advised in writing and by telephone that defendant was guilty of repeated "intolerable" behavior and was ultimately discharged for violating a program rule prohibiting sexual contact between program participants. Rivera said that a program participant told him she was present on two occasions when her roommate had sexual contact with defendant. Rivera further said that defendant was aware of *134 the prohibition, having passed a required test of knowledge of the program's rules.
The State offered no evidence beyond Ms. Brennan's testimony. Defendant offered no evidence at all.
Revocation of probation is not a stage in a criminal prosecution, but, rather, a part of the corrections process. However, the loss of liberty potentially involved is a serious deprivation which requires that the probationer be accorded due process of law. Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). As in parole revocation proceedings, there are fundamental but qualified rights to receive notice and disclosure of the basis for the charges, to be heard and present evidence, to confront and cross-examine adverse witnesses (unless the hearer reasonably finds good cause for not allowing confrontation), to have a neutral and detached hearing body and an explanation of the decision. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). New Jersey's statute embodies these rights and adds a further one of representation by counsel. N.J.S.A. 2C:45-4. Federal probationers receive the same benefit. 18 U.S.C.A. § 3006A(b). The United States Constitution does not require counsel in all cases. Gagnon, 411 U.S. at 787-790, 93 S.Ct. at 1762-1763, 36 L.Ed.2d at 664-666.
A violation-of-probation hearing is summary in nature. State v. Serio, 168 N.J. Super. 394, 399 (Law Div. 1979). That was plainly expressed in the repealed N.J.S.A. 2A:168-4 and is implicit in the current N.J.S.A. 2C:45-3a(4). In both Gagnon (involving probation), and Morrissey (involving parole), the Supreme Court stressed the informal and flexible nature of revocation hearings and the lack of need or justification for the range of protections available to defendants in criminal trials. In Morrissey, the court said, 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499;

*135 ... the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.
New Jersey has not imposed stricter state constitutional standards on probation violation hearings than the United States Constitution demands. See State v. Generoso, 156 N.J. Super. 540, 546 (App.Div. 1978); State v. Johnson, 133 N.J. Super. 457 (App.Div. 1975); State v. Zachowski, 53 N.J. Super. 431, 440 (App.Div. 1959).
In probation violation hearings, the court has two separate functions, fact-finding and disposition. The first issue a court must decide is whether a violation of probation occurred. See Douglas v. Buder, 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973). The second is what to do about a violation that it finds took place.[1] If the charged violation is a conviction of defendant for another offense, the proofs will normally be brief indeed.[2] If the charged violation is itself non-criminal, then the court must determine if it is
satisfied that the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition [of probation]. [N.J.S.A 2C:45-3a(4)].
By what standard is a court to be "satisfied" that a violation occurred? Proof of violation beyond a reasonable *136 doubt is not constitutionally required as it is in criminal trials. Schneider v. Housewright, 668 F.2d 366, 368 (8 Cir.1981); State v. Maier, 423 A.2d 235 (Me. 1980). New Jersey's cases seem, however, to express a burden-of-proof standard of questionable constitutional validity. The standard first appeared in State v. Moretti, 50 N.J. Super. 223, 237 (App.Div. 1958), where the court said:
It is only necessary that the judge shall have reason to believe them [the charges] to be true....
The standard was essentially repeated in State v. Wasserman, 75 N.J. Super. 480, 485 (App.Div. 1962) aff'd o.b. 39 N.J. 516 (1963):
... the trial judge was only required to have had reasons to believe the violation charges were true in order to justify the revocation.
It appeared again in State v. Serio, 168 N.J. Super. 394, 399, n. 1 (Law Div. 1979), and in State v. Garcia, 193 N.J. Super. 334, 338 (App.Div. 1984).
None of the courts expressing this verbal formula actually ruled that a court which was not satisfied of a violation by a preponderance of the evidence could nevertheless revoke probation.[3] The formula, however does not reject that possibility. It may well be that a "reason to believe" standard would not satisfy the requirements of due process in violation proceedings. 3 LaFave and Israel, Criminal Procedure, Sec. 25.4(c), p. 162 (1984). See State v. Maier, 423 A.2d 235, 239 (Me. 1980). It certainly runs against the grain of the language of N.J.S.A. 2C:45-3a(4), which requires a court to be "satisfied that the defendant has ... failed to comply." Some jurisdictions require proof by clear and convincing evidence or the like. See, e.g., Sigman v. Whyte, 165 W. Va. 356, 268 S.E.2d 603 (1980). The majority, do not, however, see, e.g., State v. Rasler, 216 *137 Kan. 192, 532 P.2d 1077 (1975), and we believe it unnecessary to do so for the fair protection of a probationer's constitutional rights. We hold, therefore, that a court may not find a violation of probation unless defendant has been convicted of another offense or the court is satisfied by a preponderance of the evidence that defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of probation.
The court's disposition function is predictive and discretionary. Morrissey, 408 U.S. at 483-485, 92 S.Ct. at 2601-2602, 33 L.Ed.2d at 495-497. The court can impose
... any sentence that might have been imposed originally.... [N.J.S.A. 2C:45-3b]
or continue probation under the same or new conditions.[4]N.J.S.A. 2C:45-3b; 2C:45-4. The only substantial difference from original sentencing is the added information made available to the court by defendant's subsequent conduct. The State may show aggravating circumstances, Anaya v. State, 96 Nev. 119, 606 P.2d 156, 159 (1980), and the probationer may show mitigating circumstances. United States v. Ferguson, 624 F.2d 81, 83 (9 Cir.1980). Compare N.J.S.A. 2C:44-1. It is the court's sound judgment that is invoked, and the exercise of that judgment will not be reversed on appeal unless it was mistakenly exercised. State v. Johnson, 133 N.J. Super. 457, 461 (App. Div. 1975). See State v. Nakamura, 59 Haw. 378, 581 P.2d 759 (1978).
The sentencing principles of State v. Roth, 95 N.J. 334, 363-364 (1984), apply, mutatis mutandis, to the disposition of a probation violation. The exercise of the court's judgment (1) must be based on findings of fact grounded in competent, reasonably credible evidence, (2) must involve the application of correct legal principles, and (3) must avoid such a clear error of judgment that it shocks the judicial conscience.
*138 In its fact-finding phase, the court proceeds in a summary manner to a determination whether a violation of probation occurred. Since the hearing is not a stage in a criminal proceeding, defendant's Fifth Amendment right to remain silent does not apply, and a failure to testify may be considered by the court. State v. Johnson, 186 N.J. Super. 423 (App.Div. 1982). It has been held elsewhere that the defendant may be compelled to testify with respect to conduct not itself criminal. See cases cited, 3 LaFave and Israel, supra Sec. 25.4(c), p. 164, n. 84-85. Cf. Note, 74 Mich.L.Rev. 525, 537 ff. (1976).
In violation hearings, the circumstances control the admission and consideration of offered evidence. In some situations, there is no adequate alternative to live testimony. In appropriate circumstances, however, the court may consider the conventional substitutes for live testimony, such as affidavits, depositions, and documentary evidence. Gagnon, 411 U.S. at 783, n. 5., 93 S.Ct. at 1760, 36 L.Ed.2d at 662.
The right of confrontation recognized by the Supreme Court in Gagnon and Morrissey is not absolute, but rather one element among several to be considered and weighed by the hearing body. There is no constitutional bar to admission and consideration of demonstrably reliable hearsay evidence, but a finding of violation may not be bottomed on unreliable evidence. United States v. McCallum, 677 F.2d 1024 (4 Cir.1982) (admitting a report from the probationer's caseworker at a Salvation Army center explaining why the probationer lost his job and was discharged from the center, the court noting the reliability of the report, partial corroboration by the probationer's admissions, and the absence of challenge to the accuracy of the report); Marshall v. Commonwealth, 638 S.W.2d 288 (Ky.App. 1982), (admitting a report from director and telephone call from staff member of drug program indicating reasons why the probationer failed to complete the program, the court stressing the reliability of the information and the absence of a factual dispute); Prellwitz v. Berg, 578 F.2d *139 190 (7 Cir.1978) (admitting, as a business entry, a probation department report detailing unsuccessful attempts to find the probationer). See, also, McCrary v. State, 464 So.2d 670 (Fla.App. 1985); United States v. Burkhalter, 588 F.2d 604 (8 Cir.1978); Anaya v. State, 96 Nev. 119, 606 P.2d 156 (1980); United States v. Pattman, 535 F.2d 1062 (8 Cir.1976).
The admission and consideration of reliable hearsay evidence in probation violation proceedings is both fair and practical. Probationers are not required to give notice of their defense. Thus, it may be impossible to say in advance what factual elements of the State's case may be contested. The contested elements may bear upon the issue of violation or the issue of disposition or, because the issues are normally tried together, upon them both. The production of witnesses to geographically remote but material events which may not be contested would be inconvenient and wastefully expensive. Thus, the State may be permitted to rely initially on hearsay evidence but supplement its proofs, where it seeks leave to do so, concerning matters which the probationer contests by eliciting evidence on cross-examination or by the introduction of contrary evidence.[5] Such a course may require brief adjournment of the hearing, but it represents a fair balance of the probationer's rights with the interest of the public.
A probation violation, other than conviction of another offense, occurs if the probationer "inexcusably fail[s] to comply with a substantial requirement imposed as a condition...." N.J.S.A. 2C:45-3a(4) (emphasis supplied). Although the court ultimately must be satisfied of the absence of excuse, the State is not required to offer evidence negativing excusability. Cf. State v. Ingram, 98 N.J. 489 (1985). If the State's evidence of a violation does not itself suggest the existence of an excuse *140 therefor, it is up to the probationer to raise the issue by eliciting evidence of excuse on cross-examination or by the introduction of such evidence. A failure to so inject the issue is sufficient to justify the conclusion that the violation is not excusable. See State v. Moretti, 50 N.J. Super. 223, 243-244 (App.Div. 1958) (even where the State proved that a condition of probation was not satisfied, it was not a violation because "defendant established valid excuses."); Humphrey v. State, 290 Md. 164, 428 A.2d 440 (1981) (failure to gain admittance to drug program not a violation if probationer proves failure was not willful); cf. Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), as to failure to pay a fine.
In the present case, one of defendant's conditions of probation was that he successfully complete a residential drug program. The State proved, by reliable hearsay evidence, defendant's discharge from the program and the reasons for it. If there was a dispute whether defendant had really been discharged, whether defendant actually behaved as the program staff reported, whether discharge was a reasonable response, or whether defendant's conduct was excusable, it was up to defendant to create that dispute by eliciting evidence to that effect on cross-examination or by offering such evidence. His failure to do so created the reasonable and lawful inference that no such dispute existed. That inference, coupled with the reliable hearsay proofs, was sufficient basis for Judge Hoffman's determination that a violation of probation had occurred. State v. Johnson, 42 N.J. 146, 162 (1964).
Defendant's second argument before us is that defendant's sexual conduct was constitutionally protected. The program's prohibition was therefor unlawful, he argues, and was also invalid because it was not reasonably related to the rehabilitative purposes of N.J.S.A. 2C:45-1. Not so. Although adult consensual sexual behavior is constitutionally protected, State v. Saunders, 75 N.J. 200 (1977), it is not freely exercisable at all times and in all places. There are some circumstances *141 in which such behavior can be the subject of reasonable regulation. A residential drug program is one of them.
Sexual abstinence was not a condition of defendant's probation. It was a requirement of the drug program, whose rules prohibited sexual contact among program participants. We have no doubt of the wisdom of such a rule in the administration of such a program. As to the rehabilitative purposes of N.J.S.A. 2C:45-1, we need say only that every drug program regulation need not justify itself as rehabilitative. It is enough if a reasonable administrative need of the program be served without unnecessary curtailment of personal freedom.
A probationer expelled from a residential drug program must be given the opportunity, in probation violation proceedings, to challenge the decision of expulsion and any program rules involved. Very wide latitude is, however, granted in the administration of such a program, and expulsions are assumed to have been reasonable and soundly based. Thus, to avoid a finding of violation, the probationer must make the affirmative showing that the expulsion was baseless or irrational or that the involved program rule deprived residents of freedoms otherwise protected by law without justification afforded by the reasonable needs of the program. Such a showing would make the expulsion "excusable." Defendant made no such showing in the present case.
Defendant's third argument is that he should receive credit against his custodial term for the time he spent in the drug program. R. 3:21-8 requires a defendant to be given credit on a custodial sentence
for any time he has served in custody in jail or in a state hospital between his arrest and the imposition of sentence.
The rule applies to probationers sentenced to custodial terms after revocation proceedings. State v. Fisher, 115 N.J. Super. 373, 379 (App.Div. 1971).
We are aware of only one instance in which a New Jersey probationer received sentence credit for time served in a drug *142 program. It was the unique case of State v. Williams, 81 N.J. 498 (1980), in which the trial court modified a sentence and put defendant on probation conditioned on successful completion of a drug program. After defendant completed the program, the modification order was reversed on appeal and defendant was returned to prison. Since the interruption in the sentence was created by a court's error and defendant had completed the program, the Supreme Court decided that the interest of justice would be served by giving sentence credit for the time out of prison.
Ordinarily, probationers given custodial sentences after violations are not entitled to credit for time spent on probation. State v. Braeunig, 135 N.J. Super. 89, 94 (Law Div. 1975), mod. on other grounds, 140 N.J. Super. 245 (App.Div. 1976). It has been argued that attendance at a rigorous residential drug program is the equivalent of time spent "in custody in jail or in a state hospital" and that, therefore, sentence credit should be given.
The argument was made in State v. Smeen, 147 N.J. Super. 229 (App.Div.), certif. denied 74 N.J. 263 (1977). Defendant sought credit for pre-conviction attendance at a residential drug program as a condition of his release on bail pending trial. In denying credit, the court pointed out that credit was due only for time spent "in custody," which was
... an involuntary confinement in either a penal or medical facility, and the critical aspect of involuntariness in this regard is, tautologically, defendant's not being at liberty by an exercise of his own will to choose to leave that facility. [Id. at 233].
The court noted that the program facility had no mechanism or authority to prevent a patient from leaving, and that leaving would not constitute the offense of escape.
The question next arose in State v. Ryan, 171 N.J. Super. 427 (App.Div. 1979), rev'd on other grounds, 86 N.J. 1 (1981), cert. den. 454 U.S. 880, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981). The probationer had been given a custodial sentence after violations of probation, and sought credit for the time spent on probation. *143 This court held that the restrictions and duties imposed on the generality of probationers could not be equated with jail time. Separately considering the time spent in the drug program, this court found it had an insufficient record to determine the extent to which defendant's liberty had been restrained at the program facility. It thus denied credit without prejudice to defendant's right to move in the trial court, but it expressed doubt that a sufficient showing of equivalency could be made. 171 N.J. Super. at 442. On review, the Supreme Court affirmed that aspect of the decision and, generally, adopted the court's reasoning. However, it reversed on other grounds. 86 N.J. at 6.
In order to secure sentence credit for the time spent at a residential drug program, a probationer must show that the program was so confining as to be substantially equivalent to custody in jail or in a state hospital. Upon a showing of equivalency, a failure to give credit might create an invalid classification. See State v. Ryan, 171 N.J. Super. at 442. Plainly, no such showing was made here. The evidence was the program's rules and the uncontradicted representations contained in a supplementary letter from counsel. A participant's eighteen months are divided into four phases: "probation" for fifteen to thirty days; "recuperation" for three to five months; "assimilation" for four to six months; and "socialization" for four to five months.[6] The life of a participant is highly structured and restricted in the early phases and becomes less so as he progresses. Rules intrude deeply into the participant's life. They not only prohibit conduct; they also require participation in educational, vocational and therapeutic activities. The rules are enforced by orders relegating a participant to a more restricted, less advanced stage. At first, a participant may not leave the premises at all, but, as he progresses, he is given *144 greater liberty until, in the final months, forty-eight hour passes may be earned.
Although the program imposes restriction on personal freedom, the participant's abiding by them is voluntary. The program staff does not lock him in. Non-cooperation in activities and violation of restrictions produce greater restrictions, but are not themselves criminal conduct, do not subject the participant to arrest, and departure is not the offense of escape. Cf. N.J.S.A. 2C:29-5a; 2C:29-7.[7]Cf. State v. Moore, 192 N.J. Super. 437 (App.Div. 1983); State v. Walker, 131 N.J. Super. 547 (App.Div. 1974). But see State v. Babcock, 157 N.J. Super. 107, 110 (App.Div. 1978).
Although unauthorized departure from a residential drug program may have serious consequences, the participant does retain the option to leave and incur those consequences. Attendance at such a program is not the equivalent of "custody" so long as there are no physical restraints and a participant retains the option to leave without committing an additional crime. Out-of-state cases are in accord. Pennington v. State, 398 So.2d 815 (Fla. 1981); State v. Marti, 372 N.W.2d 755 (Minn.App. 1985); Grant v. State, 99 Nev. 149, 659 P.2d 878, 879 (1983); State v. Babcock, 226 Kan. 356, 597 P.2d 1117 (1979); People v. Freeman, 95 Ill. App.3d 297, 50 Ill.Dec. 846, 420 N.E.2d 163 (1981); People ex rel. Broderick v. Noble, 26 Misc.2d 903, 207 N.Y.S.2d 467 (1960). See People ex rel. Robinson v. Warden, 58 A.D.2d 559, 396 N.Y.S.2d 19, App.Dism., 42 N.Y.2d 1051, 399 N.Y.S.2d 214, 369 N.E.2d 770 (1977). Contra, see Lock v. State, 609 P.2d 539, 545-546 (Alaska 1980); Commonwealth v. Mallon, 267 Pa.Super. 163, 406 A.2d 569 (1979); People v. Rodgers, 79 Cal. App.3d 26, 144 Cal. Rptr. 602 (1978).
*145 Contrary authorities arise under differently worded statutes and in unusual facts. See, for example, People v. Stange, 91 Mich. App. 596, 283 N.W.2d 806 (1979); People v. Weatherall, 131 Ill. App.3d 867, 87 Ill.Dec. 28, 476 N.E.2d 489 (1985).
New Jersey's test for sentence credit focuses on the concept of "custody," and employs an understandable and constitutionally valid distinction. See Pennington v. State, 398 So.2d at 816. Attendance at a residential drug program shares some of the characteristics of jail time. Perhaps, successful completion by probationers might be encouraged by equating the two in some fashion.[8] Perhaps, denying credit motivates a probationer to avoid expulsion by making completion a means of avoiding passage of uncredited time. We do not choose between those policy judgments. Perhaps, partial credit would be appropriate. 3 ABA Standards for Criminal Justice 18-7.3(e) (2d ed 1980). That, however, is for consideration by the Supreme Court or the Legislature.
Affirmed.
NOTES
[1] In addition to revoking probation and imposing a new sentence, which may but need not be custodial, a court may, after notice and a hearing, add or modify conditions of probation, even in the absence of revocation. N.J.S.A. 2C:45-4.
[2] See United States v. Gentile, 610 F.2d 541 (8 Cir.1979). If the charged violation is the commission of an offense for which defendant has not yet been tried, the issue of guilt or innocence of that offense is not normally tried in a summary hearing. Defendant may be committed without bail in the probation proceedings pending determination of the new criminal charge "if there is probable cause to believe that the defendant has committed another offense or if he has been held to answer therefor...." N.J.S.A. 2C:45-3a(3); 2 Final Report of the New Jersey Criminal Law Revision Commission (1971) p. 347. As to whether acquittal of the new criminal charge bars finding a violation of probation based on the same conduct, see Jackson v. State, 420 N.E.2d 1239 (Ind. App. 1981); Commonwealth v. Brown, 503 Pa. 514, 469 A.2d 1371 (1983); In re Coughlin, 16 Cal.3d 52, 127 Cal. Rptr. 337, 545 P.2d 249 (1976).
[3] In Morretti, the revocation was reversed for other reasons, 50 N.J. Super. at 249. In Wasserman, the trial court found a violation "beyond a reasonable doubt." 75 N.J. Super. at 485. Both Serio and Garcia dealt with bail pending disposition of revocation proceedings and mentioned the burden of proof only in passing. 168 N.J. Super. at 399, n. 1; 193 N.J. Super. at 338.
[4] See State v. Ryan, 86 N.J. 1, cert. den. 454 U.S. 880, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981), for the treatment of cases in which a period of incarceration has already been served.
[5] The court may, of course, determine that the State's proofs are of such poor quality as to have little weight even if uncontradicted. Conversely, the court may conclude that the State's hearsay evidence is sufficient to overcome live testimony offered on behalf of the probationer.
[6] There appears to be an arithmetic problem in the program rules.
[7] The State did not raise the issue whether defendant should, in any event, forfeit sentence credit for time spent in the program during which his behavior was so "intolerable" that he was expelled.
[8] The Intensive Supervision Program adopted in 1983 apparently grants sentence credit to participants for the time spent in the program while their custodial sentences are suspended.