273 N.J. Super. 436 (1994)
642 A.2d 422
STATE OF NEW JERSEY IN THE INTEREST OF S.T.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 1994.
Decided June 3, 1994.
*438 Before Judges J.H. COLEMAN, MUIR, Jr. and LEVY.
Thomas A. Belfatto argued the cause on behalf of appellant S.T.
Jean E. Stanfield, Assistant County Prosecutor, argued the cause on behalf of respondent State of New Jersey (Stephen G. Raymond, Burlington County Prosecutor, attorney).
The opinion of the court was delivered by PAUL G. LEVY, J.S.C. (temporarily assigned).
*439 On appeal from a custodial disposition for violation of probation, a juvenile offender seeks credit for time spent in a residential program for treatment of juvenile sex offenders. We affirm the disposition denying such credit.
S.T., sixteen years old, admitted he committed an offense, which if committed by an adult would be second degree sexual assault. He was adjudicated a delinquent and received a suspended disposition and was placed on probation for three years conditioned on successful completion of an 18-month residential program at Pinelands Residential Group Center. S.T. was expelled from the program and, for violation of probation, eventually given a new disposition of an indeterminate term at Jamesburg with a three year maximum. Pursuant to R. 5:21-3(e), he was credited with all time served in detention (both prior to his original disposition and after he left Pinelands until this disposition) but denied credit for 248 days spent at the Pinelands Center.
On appeal, the juvenile seeks custodial credit for the time he spent at the Pinelands Center, making the following contentions:
POINT I THE COURT BELOW ERRED IN DENYING THE JUVENILE'S MOTION FOR CREDIT FOR TIME SPENT IN THE PINELANDS RESIDENTIAL GROUP CENTER IN THAT THE COURT FAILED TO DISTINGUISH BETWEEN THE ADULT AND JUVENILE CREDIT PROVISIONS, RESPECTIVELY, R. 3:21-8 AND R. 5:21-3(e), INASMUCH AS THE STANDARD FOR CREDIT UNDER THE JUVENILE PROVISION IS MORE RELAXED THAN THAT UNDER THE ADULT PROVISION.
POINT II THE JUVENILE IS ENTITLED TO RECEIVE CREDIT FOR TIME SPENT AS A RESIDENT IN THE PINELANDS CENTER WHERE HE HAD BEEN COURT-ORDERED TO ATTEND THE PINELANDS PROGRAM AS A CONDITION OF PROBATION INASMUCH AS PROBATION IS A FORM OF PUNISHMENT AND THE FAILURE TO CREDIT THE JUVENILE WITH TIME SPENT ON PROBATION WOULD CONSTITUTE MULTIPLE PUNISHMENT FOR THE SAME OFFENSE AND WOULD THEREFORE BE IN VIOLATION OF THE FIFTH AMENDMENTS GUARANTEE AGAINST DOUBLE JEOPARDY.
POINT III DUE PROCESS AND FUNDAMENTAL FAIRNESS REQUIRE THAT JUVENILES RECEIVE THE SAME CREDIT AS ADULTS, AND SINCE ADULTS RECEIVE CREDIT FOR TIME SPENT IN TREATMENT AT A SEX OFFENDERS DIAGNOSTIC UNIT, JUVENILES SHOULD BE ENTITLED TO CREDIT FOR TIME SPENT AT A SEX OFFENDERS TREATMENT FACILITY.
*440 POINT IV SOUND PUBLIC POLICY AND THE INTEREST OF JUSTICE DEMAND THAT THE JUVENILE RECEIVE CREDIT FOR TIME SPENT AS A RESIDENT IN THE PINELANDS CENTER WHERE THE JUVENILE'S TERMINATION FROM THE PROGRAM ULTIMATELY RESTED UPON A DETERMINATION THAT THE JUVENILE'S NEEDS COULD NOT BE ADEQUATELY ADDRESSED BY THE PROGRAM'S THERAPEUTIC APPROACH AND WHERE THE EFFECT OF DENYING THE JUVENILE SUCH CREDIT IS TO PUNISH HIM FOR MAKING THE ATTEMPT TO REHABILITATE HIMSELF.

I.
Normally, adult probationers resentenced after violating probation are denied credit for any time spent on probation, including time spent in a residential rehabilitation program. The development of this concept, as applied to adult drug treatment programs, is set forth in State v. Reyes, 207 N.J. Super. 126, 142-145, 504 A.2d 43 (App.Div.), certif. denied 103 N.J. 499, 511 A.2d 671 (1986).
There the defendant was sentenced to a probationary term conditioned on successful completion of an 18-month residential drug treatment program. He began the regime but was discharged after four months and charged with violating probation for failure to complete the program. His probation was revoked, and a new sentence was imposed; the court denied credit for the four months spent in the program. Examining the parameters of the program, we found it restricted a participant's personal freedom, but concluded compliance was voluntary in the sense that a participant was not locked in at the facility and though noncompliance could produce greater personal restrictions, a noncompliant participant was not subject to arrest nor did his noncompliance constitute criminal conduct. We noted further:
Although unauthorized departure from a residential drug program may have serious consequences, the participant does retain the option to leave and incur those consequences. Attendance at such a program is not the equivalent of *441 "custody" so long as there are no physical restraints and a participant retains the option to leave without committing an additional crime.
* * * * * * * *
New Jersey's test for sentence credit focuses on the concept of "custody," and employs an understandable and constitutionally valid concept. (citation omitted) Attendance at a residential drug program shares some of the characteristics of jail time. Perhaps, successful completion by probationers might be encouraged by equating the two in some fashion.... Perhaps, denying credit motivates a probationer to avoid expulsion by making completion a means of avoiding passage of uncredited time. We do not choose between those two policy judgments. Perhaps partial credit would be appropriate. (citation omitted) That, however, is for consideration by the Supreme Court or the Legislature.
[Id. at 144-45, 504 A.2d 43.]
Therefore we found the defendant there was not in custody and was not entitled to credit for time served.[1]
Somewhat analogous is State v. Towey, 114 N.J. 69, 86, 552 A.2d 994 (1989), where the Court denied credit to a defendant who entered a psychiatric hospital voluntarily. There defendant admitted herself to the hospital two weeks before murder charges were filed against her. At a bail hearing, defense counsel informed the court that defendant required psychiatric assistance and would be psychologically harmed if she were removed from the hospital. The trial court set bail subject to the condition that defendant be arraigned upon her release from the hospital. The Court found defendant's confinement was not custodial and did not warrant credit because she entered the hospital voluntarily, remained there voluntarily and was to be arraigned immediately upon release.
In the case of a split sentence, where probation is conditioned on some custodial time being served, the general "no credit" rule is not applied; instead credit is given on resentencing *442 after a violation of probation for the custodial term previously imposed. In State v. Rosado, 256 N.J. Super. 126, 606 A.2d 835 (App.Div. 1992), defendant was sentenced to probation for five years, conditioned on a 364 day term in the county jail. He was released on parole before he completed that term, and upon completion of parole, he was transferred to the county probation supervision unit. While in that status, he violated probation and was resentenced to a straight term of imprisonment, with credit given only for the time he was in jail from arrest through sentencing to release on parole. We extended credit for the unserved balance of the 364 day term when he was on parole, but not for any of the time thereafter when he was continued on probation before he violated that probation.
The Supreme Court affirmed, noting the dichotomy between probation violations and parole violations. Credit is given in a parole situation because a paroled defendant is permitted to serve the remainder of his sentence out of custody as long as he complies with the terms of the parole. Under a split sentence the Court required a credit for the entire custodial part of the sentence since the defendant had served that portion of the sentence either in custodial confinement or on parole.[2] Although Justice Handler dissented because he believed Rosado was not really on parole but only on another form of probation, all seven Justices were of the opinion that credit was not to be given for noncustodial time spent on probation when the defendant is resentenced for violating that probation. State v. Rosado, 131 N.J. 423, 621 A.2d 12 (1993).
We have another significant consideration when dealing with an adult probation violator. That concern is to prevent the criminal from controlling his time spent in custodial punishment. In Artway v. Commr., N.J. Dept. Corrections, 216 N.J. Super. 213, *443 523 A.2d 275 (App.Div. 1987), we affirmed the decision of the Commissioner of Corrections transferring the defendant from the general prison population back to the Adult Diagnostic and Treatment Center (ADTC) at Avenel to serve his original sentence with attendant treatment. While at the ADTC, he misbehaved and sought to be transferred back to the general prison population (from which he could shortly be paroled) and thus frustrate treatment. We said:
A defendant shall neither be allowed to abuse the correction system nor select where he is to serve his sentence by deliberate, illegal conduct. Here, Artway has decided to enforce his own set of rules of conduct and determine his own place of incarceration.
[Id. at 218, 523 A.2d 275.]
See also State v. Bowen, 224 N.J. Super. 263, 272 and 279, 540 A.2d 218 (App.Div.), certif. denied, 113 N.J. 323, 550 A.2d 442 (1988). A situation where a probationer's noncompliant behavior allows him to avoid treatment or custodial time cannot be condoned. Otherwise all efforts at rehabilitation through therapy and other means will be frustrated.

II.
S.T. is a juvenile sex offender. It was obvious to the Family Part judge, and is obvious to us, that S.T. needed specialized treatment if he was to be rehabilitated. Thus he waited, in detention, for more than two months until he was accepted in the Pinelands program. When S.T. appeared on February 25, 1993 for disposition, the judge suspended a term of confinement to Jamesburg and placed S.T. on probation for three years, conditioned on successful completion of the Pinelands program. S.T. participated in the Pinelands program as a condition of probation, not as an incident of incarceration.
On November 10, 1993, S.T. was terminated from the program because he failed to comply with the treatment portion. The Superintendent explained:

*444 Though [he] did show progress in the educational, pre-vocational and individual therapy components at Pinelands, he never gave up his verbal and, at times, violently physical resistance to group therapy when it centered on his own sexual offending. Since Pinelands is, at it's heart, a group program, such a refusal by a resident to accept treatment is cause for removal.
He suggested S.T. be placed in a structured setting so he could be closely supervised and recommended he be given individual psychiatric therapy so "he and potential victims of his may be more safe."
For adult probationers, such as the defendants in Reyes, Towey, Artway and Rosado, we focused on the custodial nature of the defendant's probationary sentence. Juvenile dispositions, however, are not the same as adult sentences. The juvenile justice system places much greater emphasis upon rehabilitation. State in the Interest of C.A.H. and B.A.R., 89 N.J. 326, 336, 446 A.2d 93 (1982). The basic philosophy in the treatment of juvenile offenders has always been to reform and educate juveniles, not to punish them. State v. Smith, 32 N.J. 501, 536, 161 A.2d 520 (1960), cert. denied, 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961). Among the stated purposes of the Code of Juvenile Justice, is:
b. Consistent with the protection of the public interest, to remove from children committing delinquent acts certain statutory consequences of criminal behavior, and to substitute therefor an adequate program of supervision, care and rehabilitation;
d. To secure for each child coming under the jurisdiction of the court such care, guidance and control, preferably in his own home, as will conduce to the child's welfare and the best interests of the State; and when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents;
[N.J.S.A. 2A:4A-21b, d.]
To ensure the rehabilitative nature of the Code, the Family Court exercises authority over the dispositional phase. The Code of Juvenile Justice establishes 18 separate dispositional options to deal with juvenile offenders. N.J.S.A. 2A:4A-43. The possible dispositions include in-home and out-of-home supervision, probation, civil commitment, fines, restitution, community service, work *445 programs, treatment programs and incarceration. State in Interest of J.L.A., 262 N.J. Super. 78, 80, 619 A.2d 1321 (App.Div.), certif. granted, 134 N.J. 477, 634 A.2d 525 (1993).
It is even more important that a juvenile on probation not be able to control the nature or location of treatment by choosing to frustrate a prescribed mode of treatment. Artway considerations abound. A probationary disposition conditioned on treatment in a residential program, such as the Pinelands Center, complies with N.J.S.A. 2A:4A-43b(3), the condition being imposed to aid rehabilitation of the juvenile. A juvenile could also be given a disposition of incarceration in a residential treatment facility, as a "suitable institution maintained by the Department of Corrections for the rehabilitation of delinquents," pursuant to N.J.S.A. 2A:4A-44d(1). Obviously a trial judge will have different considerations in mind when deciding whether to incarcerate a juvenile or put the juvenile on probation. If the juvenile on probation could simply fail to cooperate with the treatment after a period of time and effectively walk away from the residential program, hoping for another disposition or credit against any incarceration to be imposed, he or she would be controlling his or her own disposition, contrary to the philosophy of Artway.
It is well established for adult defendants that credits for custodial time (distinguished from ordinary probationary time) will be applied at a resentencing after revocation of probation. State v. Fisher, 115 N.J. Super. 373, 279 A.2d 885 (App.Div. 1971). Lacking a specific rule dealing with juveniles, in State in the Interest of W.M., 147 N.J. Super. 24, 28, 370 A.2d 519 (App.Div. 1977) we used R. 3:21-8 to authorize a credit for a juvenile's prior detention against his custodial disposition. Later, R. 5:21-3(e) was adopted to deal with juvenile dispositions, but it limits credit to time spent in detention or shelter care.
S.T. contends his time at the Pinelands Center was custodial because it was as restraining as if he had been in a detention center or court-ordered shelter care. S.T. argues credit is due when a juvenile spends time in any court-ordered out-of-home *446 placement or any placement in a facility with physical restrictions. In essence, he asks this court to apply R. 5:21-3(e) to a juvenile participating in a residential sex offender treatment center as a condition of probation and credit any time spent in the center against a disposition for probation violation. Alternatively he argues the Pinelands Center is a physically restricting facility and should be considered equivalent to detention time.
The Pinelands Residential Group Center,[3] operating since the fall of 1981, is a residential placement facility for juvenile probationers between the ages of fifteen and eighteen. In 1985, it became the first residential program in New Jersey providing treatment for adolescent sex offenders. Originally under the jurisdiction of the Department of Corrections, Division of Juvenile Services, Pinelands has been operated by the Department of Human Services, Division of Juvenile Services since July 1, 1993, three months after S.T. was admitted. It is located in Burlington County approximately 10 miles from New Gretna and sits on nine acres of land in Wharton State Forest. At full capacity it serves eighteen male youngsters from anywhere in the State.
The treatment program includes daily group therapy sessions and weekly individual sessions in which residents are expected to participate. The program also includes academic and vocational instruction, wilderness experiences, environmental education, social skills training and sexual education classes. Resident juveniles are subject to certain restrictive rules: they cannot receive phone calls but may make calls to their immediate family, cannot be absent from activities except if excused by staff, cannot use drugs or alcohol or weapons, are not to engage in horseplay or fights, are not to make any transactions, are not to curse in *447 certain areas or in the presence of visitors, are not to carry money or valuables, are not to smoke indoors, are to remain in sight of the building unless authorized by staff and are to stay away from all vehicles and wooded areas. Many other rules pertaining to group sessions, meals, van trips and school are imposed, as well as safety rules for details and for vocational training.
Residents are allowed certain off-grounds privileges for shopping, accompanied either by staff or family. Additionally they leave the facility for various educational and recreational field trips planned by staff. However, certain physical boundaries apply: they are to stay within plain view of the house, cannot go into the woods unless accompanied by staff and must stay away from all vehicles, the obstacle course, wood pile and bricks.
These parameters of participation in the Pinelands program accord with the purposes of the Code of Juvenile Justice. They are simply reasonable terms of a probationary disposition. Unless the disposition made by the Family Part judge purposely confined a juvenile to incarceration, such restrictions could not be considered custodial. Applied to the Pinelands program, where by definition all participants are juvenile probationers, it would be antithetical to the Code of Criminal Justice and its emphasis on rehabilitation to determine these rules act to convert the program from one of treatment to one of custody. Accordingly, we refuse to reduce a custodial disposition for a probation violation by time spent at this residential probation facility.

III.
S.T. contends he was not treated in the same manner as an adult sex offender. Under N.J.S.A. 2C:47-1, when an adult defendant is convicted of sexual assault, the judge shall order a physical and mental examination of the defendant at the ADTC. If the defendant shows a repetitive, compulsive behavior, the judge shall sentence him to an appropriate institution for a term no longer than that provided by the law for the crime committed. N.J.S.A. 2C:47-3. While committed to the ADTC, a defendant is *448 serving "official detention" and is subject to punishment for escape. N.J.S.A. 2C:29-5. Accordingly, an adult sex offender committed to the ADTC is considered to be serving a custodial sentence and entitled to credit for time served. See State v. Lee, 60 N.J. 53, 286 A.2d 52 (1972); State v. Way, 131 N.J. Super. 422, 330 A.2d 375 (App.Div. 1974).
It is true adult defendants committed to the ADTC are given credit for the time spent in the institution, but it is incorrect to compare the treatment of an adult sex offender to that of a juvenile sex offender entering a treatment program. When a court determines it likely that a juvenile has committed an offense, the juvenile is then subject to the parens patriae jurisdiction of the State. This is illustrated by N.J.S.A. 2A:4A-24(c), which states: "Juveniles who appear before the court in any capacity shall be deemed to be wards of the court and protected accordingly." A court's disposition of a juvenile matter is meant to protect the juvenile, and this may be accomplished by restricting the juvenile's liberty. This control of liberty is distinguished from custodial confinement of adult defendants because it is not meant to be punitive but remedial.
The statute by providing that a person under the age of 16 is deemed incapable of committing a crime, does not ignore the offense but merely has the effect of stating a child under that age cannot commit a crime, but it does have the effect of placing such a child under a legal disability and subjects his liberty to the parens patriae jurisdiction of the State. It is the fact that the child committed the offense that is determinative of this restraint of liberty in aid of his rehabilitation through reformation and education. The restraint under the parens patriae doctrine is for curative rather than punitive purposes.
[Johnson v. State, 18 N.J. 422, 431, 114 A.2d 1 (1955).]
Pursuant to this doctrine, S.T.'s disposition was suspended and he received probation upon the condition that he complete the Pinelands program. Based upon these distinctions, it is reasonable to treat a juvenile sex offender differently than an adult sex offender, and such treatment does not offend fundamental fairness.

IV.
S.T. also contends he is entitled to credit for the 248 days he resided at the Pinelands Center because the standard for *449 granting credit is "more relaxed" under R. 5:21-3(e) than under R. 3:2-8 and a juvenile is entitled to credit for any out-of-home placement ordered by a court. Since R. 5:21-3(e) allows credit for shelter care, defined by N.J.S.A. 2A:4A-22 as temporary care in facilities without physical restriction, S.T. urges the proper test for determining a juvenile's entitlement to credit cannot be based on custody or confinement. While those are the proper bases for the adult credit rule, he argues the essential criterion in his case is simply a "court-ordered out-of-home placement." This argument is based solely on the language of the two rules concerning credit, and we reject it as too facile. As already noted, in its parens patriae jurisdiction, the court places certain liberty restrictions on a juvenile when it appears he or she has committed an offense. Johnson v. State, supra. The residential nature of the Pinelands program is not punitive in nature but in aid of the juvenile's rehabilitation through therapy and education. These admirable goals would be subverted by allowing credit based on the out-of-home nature of the program.

V.
We reject S.T.'s contention that public policy requires the application of the requested credit to his situation because it acts to punish rather than rehabilitate him. By staying in the Pinelands Center just as long as S.T. did, credit for that time would practically eliminate serving any time at Jamesburg. He would have escaped the rigors of the custodial disposition while failing to benefit himself and society by completing the Pinelands program and eliminating the possibility of rehabilitation through therapy. We do not ascertain any punitive aspects to the Pinelands Center program. Time spent there is solely for the purposes of rehabilitation.

VI.
Throughout his brief, S.T. has inserted comments which may be interpreted to constitute substantive arguments for application of *450 the credit he seeks. We have carefully considered those contentions, in light of the contents of the record and the arguments presented to us and conclude they lack merit. See R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] In apparent response to State v. Reyes, supra, N.J.S.A. 2C:35-14 was enacted. Pursuant to N.J.S.A. 2C:35-14d, when resentencing a defendant who violated probation, by failing to complete a drug rehabilitation program imposed as a condition of probation, credit must be granted for any time served in a residential drug treatment facility.
[2] Defendant acknowledged he was only entitled to 304 days credit since he was in jail for 117 days before original sentencing and on parole for 187 days until he was transferred to probation.
[3] Information concerning the operations of the program was supplied by counsel after oral argument. We have accepted such data as admissible from official documents used in the program (N.J.R.E. 201(b)(3)), and we have ignored argumentative or editorial comments from each counsel as well as irrelevant information contained in a narrative of an interview with the Assistant Superintendent of Pinelands.