**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2538-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ADRIAN D. PETWAY,

    Defendant-Appellant.

_____

Argued January 22, 2019 – Decided February 25, 2019

Before Judges Messano, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Law Division, Cumberland County, Indictment Nos. 15-02-0188 and 17-08-0747.

Brian P. Keenan, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Brian P. Keenan, of counsel and on the brief).

Carol M. Henderson, Assistant Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Carol M. Henderson, of counsel and on the brief).

PER CURIAM

Defendant Adrian D. Petway appeals from the denial of his motion for jail credits for time spent in a court-ordered halfway house pursuant to his sentence for a violation of special probation under N.J.S.A. 2C:35-14 (Drug Court Statute). The sole issue presented in this appeal is whether Hansen House qualifies as "a residential treatment facility" under the Drug Court Statute, entitling defendant to jail credits pursuant to Rule 3:21-8(b). Because we conclude the sentencing judge misapplied governing law and lacked a complete record, we remand for a plenary hearing.

I.

We commence our review with a brief discussion of the relevant legal principles to give context to the judge's decision, recognizing a trial court's "award of jail credits raises issues of law that we review de novo." State v. Walters, 445 N.J. Super 596, 600 (App. Div. 2016); see also State v. Maurer, 438 N.J. Super. 402, 411 (App. Div. 2014) ("Our review of a trial court's application of the Drug Court Statute and Manual[1] to a defendant involves a question of law.").

_____

[1] Admin. Office of the Courts, Manual for Operation of Adult Drug Courts in New Jersey, Directive #2-02 (July 2002) (Manual), http://www.njcourts.gov/attorneys/directives.html.

A-2538-17T3

It is well established that "Drug Courts are specialized courts within the Superior Court that target drug-involved 'offenders who are most likely to benefit from treatment and do not pose a risk of public safety.'" State v. Meyer, 192 N.J. 421, 428 (2007) (quoting Manual at 3). The Drug Court team is comprised of judges, prosecutors, defense attorneys and drug treatment professionals, who closely monitor drug-dependent offenders sentenced to special probation (Track 1), or to regular probation with mandatory drug treatment (Track 2). Manual at 3.

Pertinent to this appeal, subsection (f)(4) of the Drug Court Statute provides:

> If the court permanently revokes the person's special probation pursuant to this subsection, the court shall impose any sentence . . . that would have been required to be imposed, originally for the offense for which the person was convicted . . . . If the court . . . is required . . . to impose a term of imprisonment, the person shall receive credit . . . for each day during which the person satisfactorily complied with the terms and conditions of special probation while committed . . . to a residential treatment facility. The court, in determining the number of credits for time spent in a residential treatment facility, shall consider the recommendations of the treatment provider.
>
> [N.J.S.A. 2C:35-14(f)(4).]

Similarly, Rule 3:21-8(b), states:

> While committed to a residential treatment facility, the defendant shall receive credit on the term of a custodial sentence for each day during which the defendant satisfactorily complied with the terms and conditions of Drug Court "special probation" pursuant to N.J.S.A. 2C:35-14 . . . . The court, in determining the number of credits for time spent in a residential treatment facility, shall consider the recommendations of the treatment provider.[2]

## II.

Against that backdrop, we recite the relevant facts and procedural history. On April 19, 2016, defendant pled guilty to second-degree robbery, N.J.S.A. 2C:15-1(a)(2). Pursuant to the negotiated plea agreement, the State recommended defendant's "admi[ssion] to Drug Court special probation under all standard conditions: [p]robation up to [five] years[,] [Treatment Assessment Services for the Courts (TASC)] [r]ecommendation[, and i]ntensive [o]utpatient treatment" (initial plea agreement). Alternatively, if defendant failed to comply, the State recommended a five-year term of imprisonment, subject to the eighty-five percent parole ineligibility period mandated by the No Early Release Act

---

[2] Rule 3:21-8(b) was adopted on September 1, 2017, to include Track 2 participants, whereas the former Rule pertained only to Track 1 participants, and dispensed with the requirement that the facility must be "substantially equivalent to custody in jail or a state hospital." Pressler & Verniero, Current N.J. Court Rules, cmt. 1.2.3 on R. 3:21-8 (2018).

(NERA), N.J.S.A. 2C:43-7.2. On May 13, 2016, defendant was sentenced to special probation as a Track 1 participant in accordance with the terms of the initial plea agreement.[3]

Within two months, defendant absconded from the Drug Court Program. He was arrested on September 11, 2016, and tested positive for cocaine. On October 13, 2016, defendant pled guilty to a violation of his Drug Court probation (VOP) before another judge. In return, the State agreed that defendant "remain in Drug Court, [TASC] recommendation, Halfway House, recommended [sic]" (second plea agreement). Defendant also remained subject to the alternate sentence set forth in his initial plea agreement.

Notably, in sentencing defendant in accordance with the terms of the second plea agreement, the judge ordered "that he receive treatment at a halfway house, as recommended by the [TASC] evaluator . . . [with specific] placement in the discretion of [the] Drug Court team." The judge explained that "whatever location is available and appropriate for [defendant]," she wanted him "to begin treatment as soon as possible." (Emphasis added).

_____

[3] It is unclear from the record why defendant, who was sentenced for a second-degree crime, was not "committed to the custody of a residential substance use disorders treatment facility" pursuant to subsection (d) of the Drug Court Statute.

On November 22, 2016, defendant was placed at Hansen House, where he resided until he successfully completed the program on March 20, 2017. Following defendant's release from that facility, however, he failed to follow up with intensive outpatient treatment, and failed to report to Drug Court.

Less than two months later, defendant was arrested by Millville police when he ignored an officer's signal to stop his vehicle. Thereafter, defendant pled guilty to third-degree eluding, N.J.S.A. 2C:29-2(b), and a VOP. Pursuant to the terms of a third plea agreement with the State, defendant was sentenced to a five-year term of imprisonment with an eighty-five percent parole ineligibility term under NERA for the VOP, and a consecutive four-year prison term for the eluding conviction.

Because the parties disputed defendant's entitlement to jail credits for time spent at Hansen House, the judge conducted a hearing, during which she initially contemplated "tak[ing] testimony from some individual about the specifics of the Hans[e]n Halfway House . . . [such as] a member of [the P]robation [Department]." Instead, however, the judge commenced the hearing with her "understanding" of the facility:

> Hans[e]n House is a halfway house and what that means
> is that it is a type of transitional living facility, whose
> purpose is to provide a supportive environment, that
> includes drug treatment for recovering individuals as

A-2538-17T3

> well as support groups, employment assistance to assist a person in recovery transition to independent and drug-free living.
>
> The entity is unsecured, which means that residents may come and go within the parameters of the house rules. And, that means they can go to work, they can go to school, they can go to meetings off site.
>
> It [i]s also my understanding that if they leave the residence without intention to return that . . . individual[s] on Track 2 [sic[4]] of the Drug Court Program would not be subject to an escape charge, but instead would be subject to potentially a charge of violating their probation.

The judge did not cite a source for her synopsis of Hansen House's parameters. Neither the prosecutor nor defense counsel objected to the court's account. Defendant, who was the only witness to testify at the hearing, described a more restrictive level of freedom.

Specifically, defendant stated that, with the exception of work and furloughs, he and the other residents of Hansen House were not permitted to leave the facility. Residents did not select their places of employment, and they were escorted by staff counselors to and from work. If defendant did not report

---

[4] The judge and both parties acknowledged that defendant was a Track 1 participant, but the judgment of conviction pertaining to his second-degree robbery charge incorrectly reflects that he was a Track 2 participant. On remand, the judgment of conviction should be amended accordingly.

A-2538-17T3

to work, or left work without approval, "that would have been a problem . . . and . . . [the counselors] would have called the authorities, as well as [his] probation officer." Family and friends were permitted to visit on Sundays. Furloughs required preapproval. Defendant attended Alcoholics Anonymous (AA) and Narcotics Anonymous (NA) meetings at Hansen House, and he was not permitted to attend meetings elsewhere. He had no control over his schedule, except, "[t]o a certain degree" he had control over his meals. For example, defendant "could scramble [his] own eggs." He also was permitted to exercise. In sum, defendant was placed at Hansen House following a court-ordered TASC evaluation; he had no choice in that placement; and he successfully completed the program as evidenced by his receipt of "a [sobriety] coin."

At the conclusion of the hearing, the judge rendered an oral decision, denying defendant's application. In doing so, the judge cited subsection (d) of the Drug Court Statute, which unlike subsection (f)(4) provides, "A person placed into a residential treatment facility pursuant to this section shall be deemed to be subject to official detention for the purposes of N.J.S.[A.] 2C:29-5 (escape)." Because the judge did not locate any legal definition of a residential treatment facility, she turned to our decision in State v. Reyes, 207 N.J. Super. 126 (App. Div. 1986), for guidance.

However, in <u>Reyes</u>, we determined the defendant, who was not sentenced to special Drug Court probation, did not demonstrate that the time he spent in a residential drug program, was "so confining as to be substantially equivalent to custody in jail or in a state hospital." <u>Id.</u> at 143. In particular, participants were not locked in the facility, and were not subject to an escape charge if they left without permission. <u>Id.</u> at 144. We thus concluded, "Attendance at [a drug treatment] program is not the equivalent of 'custody' so long as there are no physical restraints and a participant retains the option to leave without committing an additional crime." <u>Ibid.</u>

Here, the judge determined defendant's testimony did not establish that his placement at Hansen House would "subject [him] to a prosecution for escape, if he were to leave th[at] facility." The judge based her decision on the absence of testimony that defendant "could not go home . . . [a]nd . . . most importantly . . . that he could get a furlough from the facility." The judge concluded Hansen House is "not a locked-down facility where [defendant] was not permitted to leave." Rather, "the term 'custody' used throughout [the Drug Statute] . . . is a more confining custody" than what defendant experienced at Hansen House.

Defendant's direct appeal was initially listed on our excessive sentence calendar. <u>R.</u> 2:9-11. We postponed the matter, transferring it to a plenary

calendar, to afford the parties the opportunity to fully brief the "sole issue of whether defendant is entitled to receive jail credit for his time at Hans[e]n House."

Defendant maintains the trial judge erred in applying the "Reyes pre-N.J.S.A. 2C:35-14, and pre-amendment R[ule] 3:21-8 understanding of the jail credit requirements." Defendant argues the trial court improperly decided the issue by determining whether his placement at Hansen House was functionally equivalent to custody in jail. We agree.

Although not contained specifically within the Drug Court Statute, the definition of a "residential treatment facility" is set forth in N.J.S.A. 2C:35-2, which pertains to terms used in chapter 35 of Title 2C of the New Jersey statutes. Specifically, a "residential treatment facility" is defined as "any facility licensed and approved by the Department of Human Services [(DHS)] and which is approved by any county probation department for the inpatient treatment and rehabilitation of drug or alcohol dependent persons." N.J.S.A. 2C:35-2. Absent from the statutory definition, or subsection (f)(4) of the Drug Court Statute, is any requirement that the facility must be so confining as to constitute a jail-like setting. Nor is the type of "treatment" limited in any way, thereby dispelling the

State's contention that mandatory attendance in the facility at AA and NA meetings is necessarily insufficient to constitute a residential treatment facility.

Because the judge improperly declined to award jail credits based on a misapplication of the governing law, and did not determine whether Hansen House met the statutory definition of a residential treatment facility, we remand for reconsideration following a rehearing on that issue.[5] At the rehearing, proofs should be elicited from the treatment provider establishing whether or not Hansen House is "licensed and approved by the [DHS]." Finally, as the judge alluded to at the outset of the initial hearing, a member of the Probation Department should also testify at the remand hearing. That testimony should include whether Hansen House is approved by Atlantic County's Probation Department and otherwise falls within the statutory definition of a residential drug treatment facility.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] Defendant provided a copy of a list of "Treatment Agenc[ies,]" purportedly from DHS's Division of Mental Health and Addiction Services, listing treatment facilities for Atlantic County. Because the record does not indicate the list was provided to the sentencing judge, it is inappropriate for our consideration on appeal. See Zaman v. Felton, 219 N.J. 199, 226-27 (2014).