**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3016-22

STATE OF NEW JERSEY,

    Plaintiff- Respondent,

v.

MICHAEL D. IVANCICH,

    Defendant-Appellant.

_____

Argued December 10, 2024 – Decided January 10, 2025

Before Judges Gilson and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-04-0245.

Kaitlin C. McCaffrey (Van Der Veen, Hartshorn and Levin) argued the cause for appellant (Kaitlin C. McCaffrey and Richard Coble (Van Der Veen, Hartshorn and Levin), on the briefs).

Meredith L. Balo, Assistant Prosecutor, argued the cause for respondent (James O. Tansey, First Assistant Prosecutor, Designated Union County Prosecutor for purpose of this appeal, attorney; Meredith L. Balo, on the brief).

PER CURIAM

Defendant Michael D. Ivancich appeals from a January 15, 2021, amended judgment of conviction, which revoked his special probation after finding the State proved six violations of probation (VOP). The court sentenced defendant to six years' imprisonment, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.[1] We affirm.

I.

In October 2015, defendant was arrested and charged with robbing six gas stations and convenience stores during a twelve-month period in September 2015. Defendant pled guilty to four of those robberies and in 2017, he was sentenced to the Union County Drug Court Program[2] for five years.

On August 30, 2018, defendant was charged with his first VOP after testing positive for illicit substances found in his urine tests. On September 17, 2018, defendant pled guilty to his first VOP based on the positive urine tests, failing to provide Narcotics Anonymous and Alcoholics Anonymous meeting

---

[1] At oral argument, defense counsel advised defendant has been released.

[2] Effective January 1, 2022, the Drug Court Program was renamed the New Jersey Recovery Court Program to better reflect the primary goal of the program. We use "Drug Court" in this opinion. Admin. Off. of the Cts., Notice: Drug Court Name Change to New Jersey Recovery Court (Dec. 28, 2021).

sheets, and ceasing to use his cell phone while in the Drug Court office. The court found defendant's plea was freely and voluntarily entered and continued defendant on Drug Court probation.

## Second VOP

At a December 21, 2018 hearing, the State stated that the probation department was going to file a VOP against defendant because he had absconded from Drug Court and tested positive for Kratom.[3] The State requested that defendant be terminated from Drug Court and incarcerated. However, the court informed defendant it would continue him in Drug Court but warned defendant this was his "last opportunity."

The court remanded defendant for thirty days to undergo an evaluation. On January 17, 2019, defendant was charged with his second VOP for using Kratom, which was not approved by the probation department. On June 21, 2019, the second VOP hearing took place. Defendant pled guilty to testing positive for Kratom and admitted he was not allowed to take Kratom under the

---

[3] "'Kratom' commonly refers to an herbal substance that can produce opioid- and stimulant-like effects. Kratom and Kratom-based products are currently legal and accessible in many areas, though U.S. and international agencies continue to review emerging evidence to inform Kratom policy." National Institute on Drug Abuse, Kratom. https://nida.nih.gov/research-topics/kratom. (Mar. 2022).

A-3016-22

terms of his probation. Defendant was sentenced to 180 days in jail and continued with Drug Court.

## Third VOP

On March 16, 2020, defendant was charged with four separate VOPs: (1) testing positive for opiates; (2) failing to make curfew; (3) refusing medication from his doctor; and (4) failing to cooperate with his treatment. Eleven days before the charges were formally filed, the State moved to remand defendant pending his third VOP hearing, which was granted. On March 27, 2020, the court released defendant on house arrest due to the COVID-19 pandemic because he suffers from an autoimmune disease.

The court conducted a hearing on the four VOPs over three non-consecutive days between September and November 2020. Senior Probation Officer LaQuisha Toney and a substance abuse evaluator, Jill Remaykis, testified on behalf of the State. Defendant presented testimony from Michael Russo, his supervisor at Safeway Construction Enterprises.

Toney testified defendant was assigned to her unit on December 5, 2019, and that she filed the third VOP against him. Toney stated that defendant was non-compliant with probation by testing positive for prohibited substances and missing treatment sessions. Toney confirmed defendant violated a court order

that required him to contact her for a curfew call. She also explained that defendant yelled, "made a scene" at the probation department, and stormed out the day before he tested positive for illicit drugs.

Toney testified that following these events, defendant was ordered to undergo a psychiatric evaluation by Dr. Kathleen Dewkye at Trinitas Hospital. According to Toney, Dr. Dewkye "attempted to prescribe psychotropic medication"—Seroquel (a mood-stabilizer)—but defendant refused the prescription.

Toney stated defendant arrived late for a treatment session and missed twenty minutes of a group session to take a personal phone call. Toney explained that defendant missed his medication management appointment on March 3, 2020, and when he arrived for his group session, he did not supply any medication to be reviewed.

Toney testified that defendant missed his June 9, 2020, individual session at Trinitas, and logged on late for his group session held via Zoom the next day. She also testified about defendant's failure to make a curfew call on July 16, 2020, and stated he did not return home until 3:37 a.m. Because defendant failed to attend another individual session via Zoom, he was discharged from Trinitas's outpatient treatment program.

A-3016-22

Toney stated that she reviewed messages from defendant and his father, where they had alleged there was "collusion, retaliation, selective enforcement, HIPAA violations, police brutality, medical negligence, [and] malpractice" in the Probation Department, and threatened a civil lawsuit. While supervising defendant, Toney observed that if he was told he couldn't do something, "he becomes very argumentative" and "will overpower, or question, or send . . . a bunch of text messages, or continue to question." Toney recommended defendant's termination from Drug Court with a state prison sentence because defendant's "behaviors [were not] changing."

On cross-examination, Toney explained that although Kratom is not an illicit substance, defendant was charged with a VOP for taking it because it's a "mood-altering substance[,] which Drug Court clients are not allowed to take." She conceded Kratom is not mentioned in the Drug Court Program's instruction manual. On re-direct examination, Toney testified that the handbook distributed to Drug Court participants provides that "energy drinks must be discussed with your probation officer prior to ingesting as some of them can result in positive drug tests."

Remaykis testified that in January 2020, defendant tested positive for opiates and when she met with him in jail, he was "angry and irate." Remaykis

6

stated she could not conduct an assessment that day because defendant was "very hard to redirect." Although defendant was currently compliant with his treatment regimen, Remaykis testified that his non-compliant behaviors may resurface.

Russo testified that defendant managed four to eight individuals at job sites, "anywhere up to 150 to 200 crews overall." According to Russo, defendant's job performance was "very good," and Russo never received any work-related complaints.

On December 22, 2020, the court found that defendant violated probation. The court credited Toney's and Remaykis's testimony in finding the State had proved by a preponderance of the evidence that defendant committed the six VOPs.

On January 6, 2021, the court sentenced defendant to six years' imprisonment subject to NERA. The court found aggravating factors three, six, and nine "significantly outweigh[ed] the very, very minute weight of mitigating factors" six, eight, and eleven. This appeal followed.

Before us, defendant presents the following arguments:

> (1) the court improperly found defendant guilty of the violation charges alleged; and

(2) the court's imposition of a lengthy state prison sentence subject to parole disqualification constituted and abuse of discretion.

## II.

A trial court's decision to revoke probation is reviewed under an abuse of discretion standard. State v. Peters, 129 N.J. 210, 218 (1992). The review of a trial court's fact finding underlying a VOP is "exceedingly narrow." State v. Locurto, 157 N.J. 463, 470 (1999). We must defer to the trial court's findings of fact, especially those that are substantially influenced by the trial court's opportunity to hear and see the witnesses and to have the sense of the case. See State v. Elders, 192 N.J. 224, 244 (2007). Thus, a trial court's finding of a VOP should not be disturbed on appeal if those findings are supported by sufficient credible evidence in the record.

Upon an allegation that a defendant has violated a condition of probation, the trial court will not hold a new criminal prosecution but rather a hearing as "part of the corrections process." State v. Reyes, 207 N.J. Super. 126, 134 (App. Div. 1986). Thus, the trial court need only be satisfied "by a preponderance of the evidence that defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of probation." State v. Jenkins, 299 N.J. Super. 61, 73 (App. Div. 1997) (citations and internal quotation marks omitted).

A-3016-22

"At a [VOP] hearing, the court must decide two issues: whether a [VOP] occurred and, if so, what to do about it." State v. Williams, 299 N.J. Super. 264, 273 (App. Div. 1997). "As to the first issue, finding that a violation occurred may be based on hearsay evidence that would be inadmissible at a criminal trial" and "a violation may consist of a failure to comply with the condition of probation or conviction of another offense." Ibid.

N.J.S.A. 2C:45-3(a)(4) authorizes "[t]he court, if satisfied that the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order . . ., [to] revoke the . . . probation and sentence . . . [of] defendant." Essentially, the statute provides for revocation of probation due to a violation of a condition of probation that is serious enough to justify revocation. State v. Baylass, 114 N.J. 169, 175 (1989). Thus, the courts will not revoke probation for mere technical violations. State v. Moretti, 50 N.J. Super. 223, 248 (App. Div. 1958). In Moretti, this court stated:

> We suggest a viewpoint towards probation requirements which seems to us to be realistic. A probationer is not expected or required at once to achieve perfection. If his [or her] conduct is that of the ordinary well-behaved person, with no serious offenses charged against him [or her] and with no indication that he [or she] intends in the future to pursue the course which led to his [or her] original conviction, the courts and probation officers should not revoke probation upon technical violations.

9

[Ibid.]

The statute also provides defendant an opportunity to demonstrate an excuse for his or her failure to comply with a requirement of probation. Reyes, 207 N.J. Super. at 139-40.

On resentencing after a VOP, the trial court is not required to impose a sentence in accordance with the initial plea agreement because "the original plea agreement does not survive a [VOP]." State v. Frank, 280 N.J. Super. 26, 40 (App. Div. 1995). "Thus, to determine the appropriate terms of the resentence, the [trial court] refers to the sentencing scheme provided in the Code for the crime to which defendant originally pled guilty rather than the terms of the sentence agreed upon by defendant in the plea agreement." State v. Sepulveda, 253 N.J. Super. 447, 451 (App. Div. 1992) (citing State v. Ervin, 241 N.J. Super. 458, 465-70 (App. Div. 1989)); see also N.J.S.A. 2C:45-3(b) (permitting a resentencing court on a revocation of probation to "impose on . . . defendant any sentence that might have been imposed originally for the offense of which he [or she] was convicted"). Moreover, on resentencing, the trial court "should view defendant as he [or she] stands before the court on that day." State v. Randolph, 210 N.J. 330, 354 (2012).

A.

First VOP

Against that legal backdrop, we first consider defendant's challenge to the January 22, 2020 drug test. Defendant contends that since Toney did not administer the drug test herself and only saw the positive results after a colleague had done so, the State improperly relied on hearsay evidence. Defendant asserts that Toney had no personal knowledge the test belonged to defendant. Defendant also maintains the State presented no record of the positive drug test result besides Toney's testimony because she failed to preserve the drug test sample, despite being ordered by the court to do so.

Defendant's claim has no merit, because by his own concession, hearsay can be used to substantiate a VOP finding. State v. Mosley, 232 N.J. 169, 173 (2018). As defendant notes, all hearsay evidence admitted must be "'demonstrably reliable,'" and in general, "'[a] [VOP] may not be bottomed on unreliable evidence[,]'" ibid. (quoting Reyes, 207 N.J. Super. at 138). However, defendant fails to identify any basis to show the court abused its discretion in finding Toney's testimony, as sole evidence of the first VOP, was not reliable. Instead, defendant merely argues that because Toney did not personally administer the drug test to defendant and relied on another's representation—the

person who administered the test—that the positive drug sample belonged to defendant, Toney's testimony was inherently unreliable.

In support of his argument, defendant relies on our Supreme Court's holding in Mosley. In Mosley, our Supreme Court found the hearsay evidence in that case was insufficient to sustain a finding of a violation of the defendant's probation because the evidence was used to substantiate new criminal charges against the defendant. Id. at 174.

More specifically, to prove that defendant had committed a new criminal offense, the State only presented the testimony of an officer, who did not observe defendant's commission of the newly alleged offense, without explaining why the officer who did witness the offense was unavailable to testify. Ibid. The Mosley Court explicitly stated that it had accepted defendant's petition for certification "limited to the issue of the trial court's acceptance of hearsay testimony as proof that defendant committed a new offense in [VOP]." Id. at 178 (emphasis added).

In the matter under review, the facts are distinguishable from those in Mosley. Moreover, defendant has not shown any of the factors identified in Mosley show that Toney's testimony was unreliable to prove defendant tested positive for drugs. These factors are: (1) "the importance of the evidence to the

court's finding"; (2) "the [probationer's] opportunity to refute the evidence"; (3) "the consequences [for the probationer] of the court's finding"; (4) "the 'difficulty and expense of procuring witnesses'"; and (5) "the 'traditional indicia of reliability borne by the evidence.'" Id. at 190 (quoting United States v. Walker, 117 F.3d 417, 420 (9th Cir. 1997)).

We note that although defendant takes issue with the actual positive drug test sample not being admitted into evidence because it had not been preserved by the State, he does not provide any support for the proposition the State is required to provide a physical sample to prove a defendant tested positive for illicit substances for a VOP. At bottom here, the court was convinced by Toney's credible testimony that defendant tested positive for opiates.

Toney's testimony constitutes substantial credible evidence, and we discern no abuse of discretion by the court. Additionally, defendant asserts the lack of a physical sample made it impossible to dispute "the credibility of the evidence" to show he violated his probation. We are unpersuaded.

Defendant had the opportunity during the hearing to attack the credibility of the State's evidence—Toney's testimony—during cross-examination, which the court ultimately did not find persuasive. We defer to the court's credibility findings. Moreover, the court found Toney's testimony was reliable to prove

defendant's positive drug test.  The court's determination is thus supported by the record.  We therefore conclude the court did not abuse its discretion in finding defendant committed the first violation.

B.

Violations Two through Six

Defendant next argues that to establish VOPs two through six, "the State's dependence on hearsay worsened" through its utilization of Toney's testimony. Defendant contends that the court erred by relying on such hearsay evidence, as well as correspondence from Trinitas Hospital, "to solidify the reliability of Toney's testimony[,]" and to ultimately find that defendant committed violations two through six.  We shall address each of these violations separately.

C.

Second VOP

The court determined defendant committed violation two by failing to make curfew calls. The court cited Toney's testimony as evidence of such, crediting her personal knowledge of defendant's schedule as his probation officer.

More specifically, Toney testified that from February 8 to February 12, 2020, defendant failed to make his curfew call by 10:00 p.m., which was a

special instruction ordered by the court. In order to make his curfew call, defendant was required to call Toney's desk phone every night at 10:00 p.m. and leave a message.

Defendant's argument lacks merit. As the expected recipient of the curfew call voicemails, Toney was the appropriate witness to testify about defendant's purported failures to comply with his curfew instruction, and more specifically, Toney had personal, firsthand knowledge of whether defendant complied with the court's order and the term of his probation by making the voicemails at the required time on the specific dates alleged. Thus, the court's reliance on Toney's unrefuted testimony in support of the second VOP did not constitute an abuse of discretion.

D.

Third VOP

The court found that defendant committed violation three by refusing medication prescribed by Dr. Dewyke on February 3, 2020. The court based its finding on a document from Trinitas Hospital that was admitted into evidence— signed by two Trinitas Hospital employees and addressed to the Drug Court— which included a February 3, 2020 entry stating in pertinent part: "[Defendant]

refused Seroquel [from Dr. Dewyke] due to [defendant's] reporting he had enough from his [primary care physician]. . . . No medication was prescribed."

The court noted that although Dr. Dewyke did not testify about defendant's refusal to take the medication, under VOP hearing rules, hearsay evidence that is typically inadmissible may be admitted on the premise that medical "providers whose livelihood it is to be improving the lives of other Drug Court participants" may not always be available for VOP proceedings. Moreover, the court also concluded that Toney's testimony regarding defendant's probation requirements and his commission of violation three, through her communication with the Trinitas Hospital employees and supervision of defendant, sufficiently corroborated the entry.

The letter that was admitted into evidence to prove defendant's noncompliance with Dr. Dewyke's directive to take the prescription is dated March 12, 2020. The letter was written and signed by two employees at Trinitas Hospital, a clinician, the Program Director of the Department of Psychiatry and Substance Abuse Services, and was addressed to Toney. The letter contained "a timeline of events since [defendant] began treatment" at Trinitas Hospital. The first of multiple entries states that on February 3, 2020, defendant refused Dr. Dewkye's prescription "[a]s documented by Dr. Dewkye."

16

Defendant maintains the entry is hearsay within hearsay because neither of the employees that signed off on the letters or Dr. Dewkye testified during the hearings. However, as noted by the court in its findings, Toney testified as to her receipt of the letter as a party involved in the correspondence with Trinitas employees. Toney also testified that the letter was placed in defendant's probation file.

At the hearing, defendant did not object to the letter's admission into evidence. Toney testified that defendant refused psychological medication from Dr. Dewkye on February 3 and February 18. While defendant objected to this line of questioning on hearsay grounds, the court correctly noted that for a VOP hearing, "the evidence rules are very relaxed."

Saliently, defendant does not identify how the hearsay evidence by Toney, or even the admission of the letter and hospital entries which explain defendant's refusal to take the medication, are unreliable and cannot support the finding that defendant committed his third VOP. See Id. at 185 (finding a VOP can be substantiated by hearsay evidence if it is determined to be reliable). And defendant ignores that the court—as required by the test as set forth in

Mosley[4]—identified its reasoning for relying on the hearsay evidence to support its finding of violation three: the natural difficulties in summoning treating physicians to provide testimony at probation hearings.

In the matter under review, defendant contents the court erred by relying on a narrative style letter written by Trinitas Hospital employees, as opposed to medical or business records. In a report from Dr. Dewkye, in support of its finding that defendant refused to accept a prescription from Dr. Dewkye on two separate dates. In defendant's view, Toney could not adequately testify about or corroborate the letter's allegations because she did not prepare it or witness or hear Dr. Dewkye offer the prescriptions to defendant. Defendant asserts the secondhand, unverifiable information in the letter—a thirdhand testimony— from Toney is not sufficiently reliable for its asserted purpose of substantiating defendant's VOP by refusing the medication. Defendant claims he never refused the prescriptions. We are unpersuaded.

Defendant did not present any evidence or testimony to support his claim that he never refused Dr. Dewkye's prescriptions but had enough medication (Seroquel) from his primary care physician to last another month. But the record

---

[4] One of the many factors the Mosley Court suggested trial courts consider in determining the reliability of hearsay evidence at VOP hearing is "the difficulty and expense of procuring witnesses." Id. at 189.

shows defendant failed to take the prescribed psychotropic medication on February 18, 2020. In addition, defendant also failed to attend a TASC[5] counseling session as directed by his probation officer. Therefore, the court's finding of the third VOP was grounded in competent evidence in the record.

E.

Fourth VOP

The court found defendant committed violation four of his probation by "fail[ing] to cooperate in exams on or about February 11 and March 3." Again, the court relied upon the March letter sent to Toney of the "timeline of events," which included a February 11, 2020 entry explaining defendant had arrived to a scheduled group meeting late, and due to his tardiness "could not be given credit for the first group" and was told by Trinitas staff to come back for the following meeting. The entry explained defendant fell asleep in his car, arrived to the second meeting late, and therefore could not receive credit for that group meeting. The court found Toney's credible testimony corroborated the entries and was sufficient to sustain its finding of violation four.

Toney testified that she was not physically present at Trinitas when defendant missed his treatment session on February 11, 2020, or his group

---

[5] Treatment Assessment Services for the Courts.

session on March 3, 2020, at which time defendant was found in the hallway and locked out of the session. According to defendant, he was on call at work 24/7 and he stepped into the hallways to take a work-related call and go to a vending machine located on another floor and unit. Toney explained she filed the fourth VOP complaint based on the letter sent to her by Trinitas staff informing her these events happened, and Toney testified she was unaware whether the Trinitas employees who wrote the letter explaining defendant missed these sessions were physically present at Trinitas at the time.

The record shows defendant never claimed that he did not miss the stated sessions. Indeed, on cross-examination, defendant only challenged the basis of Toney's knowledge of such events. As the Mosley Court noted, the State does not have the burden of "negativing excusability," and where a defendant does not elicit evidence on cross-examination demonstrating a factual dispute as to an issue underpinning a violation, the court may infer that there is no such dispute. Id. at 185 (quoting Reyes, 207 N.J. Super. at 139-40). "That inference, coupled with the reliable hearsay proofs" is a "sufficient basis for [the judge's] determination that a violation of probation ha[s] occurred." Ibid. (quoting Reyes, 207 N.J. Super. at 139-40).

A-3016-22

Moreover, the letter is reliable evidence "for its asserted purpose," because the February 11, 2020 and March 3, 2020 entries are not wholly based on the firsthand knowledge or observations of Dr. Dewyke in treating defendant and then transmitted to Trinitas employees, and then ultimately to Toney. The letter shows the entries detailing defendant's absences from the sessions were based on Trinitas employees' firsthand observations at the time. Consequently, there is no indicia of unreliability regarding the entries in the letter. The record supports the court's finding of the fourth VOP.

F.

Fifth VOP

The court found defendant committed violation five by failing to "present[] and produce[] himself and his various prescriptions for review" to the "program provider" on March 3, 2020. Toney testified that when defendant was released from jail on March 27, 2020, he agreed to adhere to the Drug Court's rules and regulations, attend appointments, stay at his parents' home, not drive a vehicle, and abide by the Governor's Executive Orders issued in response to the COVID-19 pandemic. According to Toney, defendant was compliant in April and May 2020, but on June 9, 2020, he failed to attend his individual treatment session at Trinitas, and logged on late for his Zoom group session on

21

June 10, 2020. Defendant countered that he told his therapist he missed the session because he lost his phone. Defendant also claimed his mother sought to make arrangements to bring his prescriptions to the program provider.

Defendant did not deny the allegations. Again, defendant challenges the veracity of Toney's reliance on secondhand information from Trinitas employees. We are satisfied that the court's reliance on the March 3, 2020 letter is reliable evidence in light of the undisputed factual background. The March 3, 2020 entry at issue reads: "[Defendant] missed his medication management appointment. When [defendant] arrived for group, [defendant] presented without any medication in hand to be reviewed as previously agreed with program prescriber."

This entry is based upon firsthand personal knowledge of Trinitas employees who prepared and signed the letter. Nothing in the record suggests the information is unreliable. Toney's testimony simply confirmed the letter's content. Therefore, the court's finding that defendant committed violation five was not an abuse of discretion.

A-3016-22

## G.

### Sixth VOP

Last, the court found that defendant committed violation six of his probation by failing to meet his 10:00 p.m. curfew on July 16, 2020. The court noted that it was a "fact" that defendant had to be home each day before 10:00 p.m. based on a March 17, 2020 court order that was operative at that time. The court noted that Toney's testimony made clear that defendant's obligation was not met.

Like violation two, Toney was the best person to testify as to defendant's commission of violation six, because she was the party charged to receive defendant's curfew calls. Toney testified that on July 16, 2020, defendant did not text her until 3:37 a.m. to indicate he returned home. Defendant's arguments to the contrary are without merit.

## III.

Defendant next argues the court erred in imposing a prison sentence by finding that defendant would likely not complete his treatment and could impose a danger to the community. Defendant also argues the court failed to "appropriately consider" the statutory sentencing factors.

A-3016-22

Our review of a sentencing court's imposition of a sentence is guided by an abuse of discretion standard. State v. Torres, 246 N.J. 246, 272 (2021). We must affirm the sentence of a trial court unless: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not based upon competent credible evidence in the record; or (3) the application of the guidelines to the facts of the case shock[s] the judicial conscience." State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Arguments that were not raised before the trial court are reviewed for plain error. R. 2:10-2; State v. Burnham, 474 N.J. Super. 226, 230 (2022) (finding that plain error review requires the reviewing court to "disregard any errors or omissions unless [they are] of such a nature as to have been clearly capable of producing an unjust result").

"When the court revokes . . . probation, it may impose on the defendant any sentence that might have been imposed originally for the offense of which he was convicted." N.J.S.A. 2C:45-3(b). In State v. Bieniek, 200 N.J. 601, 608, (2010), our Supreme Court noted that the role of an appellate court is not to substitute its judgment about appropriate sentencing factors for that of the sentencing judge. When the sentencing court adheres to the "sentencing

24

principles set forth in the Code and defined in our case law, its discretion [is] immune from second-guessing." Id. at 612.

Defendant first argues that the court erred by revoking his special probation and sentencing him based on an erroneous finding that defendant could not successfully complete his treatment program and poses a danger to the community if he were allowed to continue his program. There is a presumption that the court should revoke a defendant's special probation upon his or her second violation. Pursuant to the Drug Court statute, upon a second or subsequent violation,

> the court shall . . . permanently revoke the person's special probation unless the court finds on the record that there is a substantial likelihood that [defendant] will successfully complete the treatment program if permitted to continue on special probation, and the court is clearly convinced, considering the nature and seriousness of the violations, that no danger to the community will result from permitting the person to continue on special probation pursuant to this section.
>
> [N.J.S.A. 2C:35-14(f)(2) (emphasis added).]

In addition, in making its determination, "the court shall consider the nature and seriousness of the present infraction and any past infractions in relation to the [defendant]'s overall progress in the course of treatment and shall also consider the recommendations of the treatment provider." N.J.S.A. 2C:35-

25

14(f)(3). The court is required "to give added weight to the treatment provider's recommendation that the person's special probation be permanently revoked, or to the treatment provider's opinion that the person is not amenable to treatment or is not likely to complete the treatment program successfully." Ibid.

Here, while the court acknowledged that defendant had made significant progress in complying with the requirements of his treatment program at Integrity House, the court also noted that defendant had been regularly noncompliant and disrespectful to his probation officer, Toney, and the other Drug Court staff, which "bespeaks a pattern and an intention or . . . an absolute inability to get along with probation on a consistent basis." By way of example, the court pointed to defendant's prior failure to accept the terms of his house arrest. The court noted that defendant's relationship and compliance with the probation team is crucial to his special probation—"[t]he link between the defendant and the Drug Court is in many respects the probation officer"—and that his progress at Integrity House was unpersuasive when evaluated in this greater context and to prove his future success with the Drug Court program.

Our Supreme Court has recognized that Drug Court is unique in that it embraces "a team approach" which necessarily involves substantial "oversight and personal involvement of the drug court judge in the treatment process."

26                                                                                    A-3016-22

State v. Meyer, 192 N.J. 421, 429 (2007). More specifically, "[t]he judge leads court staff, probation officers, treatment counselors, substance abuse evaluators, and the prosecutor and defense attorney to monitor a participant's recovery." Ibid. Under that backdrop, the court did not abuse its discretion by determining that defendant was unlikely to comply in the future with his program under N.J.S.A. 2C:35-14(f)(2), because defendant's success with the treatment providers at Integrity House is only one component of the comprehensive treatment program facilitated by the Drug Court and its members.

Here, the court found defendant was regularly noncompliant with the other parts of his program and uncooperative with members of the Drug Court team. Thus, the court was not convinced by a preponderance of the evidence that defendant would comply with the program in whole to sufficiently rebut the presumption against revoking his special probation. N.J.S.A. 2C:35-14(f)(2). There is substantial credible evidence in the record to support the court's finding: this was defendant's third VOP hearing following numerous violations; and Toney and Reymakis both credibly testified that defendant had problematic, noncompliant behaviors that they opined would not change or may resurface again in the future.

Defendant similarly challenges the court's findings pertaining to his posing a danger to the community, N.J.S.A. 2C:35-14(f)(2). The State concedes that "the [court] did not make findings that defendant posed a danger to the community in the sense of a risk of violent crimes" and instead "express[ed] concern over defendant's misconduct throughout Drug Court." Defendant claims there is no support for such a finding, because "[d]uring the nearly three-and-a-half years [defendant] spent on probation, [defendant] did not incur any additional charges or cause any harm to the community."

However, the effect of the court's failure to make such a finding was not harmful error warranting reversal. The Drug Court statute, N.J.S.A. 2C:35-14(f)(2), provides that if, after the second or subsequent violation of special probation, the court orders that defendant should remain on special probation despite the presumption that his special probation should be revoked, the court must then accordingly make findings on the record as to defendant's substantial likelihood to successfully complete his treatment program and how he is not a danger to the community.

Simply stated, the statute requires the court, on the record, to justify its reasoning for ignoring the presumption of permanent revocation outlined in the statute. In the matter under review, the court revoked defendant's special

probation in accordance with the statute's presumption. Therefore, we conclude the court's failure to make substantive findings to either of these factors was not dispositive or harmful, because the court did not seek to overcome the presumption of revocation and make requisite findings to that effect.

IV.

Defendant next argues the court "failed to conduct a de novo review of the aggravating and mitigating factors existing at the time of [defendant]'s original sentence, which in and of itself violates the express terms of the statutory mandate and should warrant remand." Defendant also asserts the court should have also considered mitigating factors eight, ten, twelve, thirteen, and fourteen, N.J.S.A. 2C:44-1(b), and improperly assessed aggravating factor three, N.J.S.A. 2C:44-1(a).

In imposing sentence, the court must "identify whether any of N.J.S.A. 2C:44-1(a)'s thirteen aggravating factors and N.J.S.A. 2C:44-1(b)'s . . . mitigating factors apply." State v. Fuentes, 217 N.J. 57, 72 (2014). The court must make findings on the relevant statutory factors based on "competent, reasonably credible evidence[,]" ibid. (quoting Roth, 95 N.J. at 363), and then "balance the relevant aggravating factors and mitigating factors" by assigning each "appropriate weight in a case-specific balancing process." Id.

29

at 72-73. In the context of sentencing follow the revocation of a defendant's special probation,

> (4) . . . the court shall impose any sentence that might have been imposed, or that would have been required to be imposed, originally for the offense for which the person was convicted or adjudicated delinquent. The court shall conduct a de novo review of any aggravating and mitigating factors present at the time of both original sentencing and resentencing.

> [N.J.S.A. 2C:35-14(f)(4).]

Because at defendant's original sentencing, the court had found aggravating factors six and nine—"[t]he extent of defendant's prior criminal record and the seriousness of the offenses of which defendant has been convicted" and "[t]he need for deterring the defendant and others from violating the law" respectively, N.J.S.A. 2C:44-1(a)(6) and (9)—as well as mitigating factor ten—whether "defendant is particularly likely to respond affirmatively to probationary treatment," N.J.S.A. 2C:44-1(b)(10)—the court was required to assess these three same factors again during resentencing, N.J.S.A. 2C:35-14(f)(4).

For aggravating factor six, the court referenced defendant's plea agreement which resulted in his original sentence and noted that the charges

against defendant—"four second-degree robberies"—remain serious and a strong aggravating factor.

The court then also noted that aggravating factor nine was the strongest, pointing to defendant's regular noncompliance with the terms of his probation, failure to follow rules, and inability to take accountability for his actions. The court further explained that it is important for "the public to know that rules get followed, that consequences attach of significance."

Lastly, the court observed that for mitigating factor ten, the original sentencing court found that it was substantially outweighed by the aggravating factors. The court reached the same conclusion, citing that defendant is on his third VOP and therefore the application of the factor is "weak at best." Accordingly, defendant's claim that the court failed to conduct a de novo review of the factors found present at the original sentencing as required by N.J.S.A. 2C:35-14(f)(4) lacks merit.

Defendant asserts that the court incorrectly found that aggravating factor three, "[t]he risk that the defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3), applied. Defendant claims that "[t]he relevant inquiry is whether [he] presents a risk of committing another criminal offense if not incarcerated, not whether there is a risk he will have further compliance issues."

In finding aggravating factor three, the court highlighted "the history of [defendant's] three VOPs, the six specifications here found . . . , the delinquency issues in the past, the continuing pattern of disrespect to probation" and defendant's failure to take responsibility. Defendant's challenge to the court's findings ignores the fact that defendant's three violations of his probation each constitute defendant's commission of another offense to accordingly justify the basis of the court's finding of aggravating factor three.

Moreover, aggravating factor three can be based on evidence of "a defendant's lack of remorse." State v. Rivera, 249 N.J. 285, 300 (2021). Defendant's "delinquency" issues in his repeated failure to comply with the terms of his sentence—his probation—as referenced by the court, sufficiently suggests defendant lacked remorse for the offenses of which he was charged.

Defendant contends that the court improperly dismissed his arguments regarding: mitigating factor eight, that "defendant's conduct was the result of circumstances unlikely to recur," N.J.S.A. 2C:44-1(b)(8); mitigating factor ten, "defendant is particularly likely to respond affirmatively to probationary treatment," N.J.S.A. 2C:44-1(b)(10); mitigating factor twelve, defendant's "willingness . . . to cooperate with law enforcement authorities," N.J.S.A. 2C:44-1(b)(12); mitigating factor thirteen, "the conduct of a youthful defendant

was substantially influenced by another person more mature than the defendant," N.J.S.A. 2C:44-1(b)(13); and mitigating factor fourteen, "defendant was under [twenty-six] years of age at the time of the commission of the offense," N.J.S.A. 2C:44-1(b)(14).

We are satisfied the court's findings as to mitigating factors eight and ten are supported by competent and credible evidence in the record. Bolvito, 217 N.J. at 228. The court found that mitigating factor eight is inapplicable because defendant has multiple "violations of probation in the past as an adult, as a juvenile." The court used the same reasoning in finding mitigating factor ten was inapplicable, finding defendant has consistently failed to respond to probation.

As to mitigating factors twelve, thirteen, and fourteen, because defendant did not argue for an application of the factors before the trial court, we review for plain error. R. 2:10-2. Moreover, the court's failure to sua sponte consider these factors did not lead to an unjust result, as the court made clear in its findings that aggravating factors three, six, and nine, substantially outweighed any application of any of the mitigating factors.

We conclude defendant's remaining arguments—to the extend we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion.  R. 2:11-3(e)(2)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3016-22